Opinion by
 

 Spaulding, J.,
 

 This is an appeal from a judgment of the County Court of Allegheny County entered in favor of Greens-burg Plaza (Greensburg), appellee, in a garnishment proceeding brought by Maurice Lyon, trading as Monarch Oil Company (Monarch), appellant-plaintiff.
 

 Under a contract dated July 8, 1962, Ty-Wood Corporation performed certain excavation work for Greens-burg. On March 7, 1963 Ross Scott, president of Ty-Wood, assigned to Thomas and Dorothy Scott $25,000 of funds due Ty-Wood from Greensburg. The basis for this assignment was advances to Ty-Wood from Thomas Scott over a period of years beginning in 1960. On January 13, 1964 a second assignment was execut
 
 *71
 
 ed covering all the remaining funds due Ty-Wood from Greensburg.
 

 In a separate action, Monarch obtained a default judgment against Ty-Wood on July 16, 1964 and on August 18, 1964 issued execution naming Greensburg as garnishee. Subsequent interrogatories and answers disclosed the assignments to Thomas and Dorothy Scott, while answers to additional interrogatories disclosed there were no amounts owing from Greensburg to Ty-Wood, that claim having been settled in a federal court action of March 1966 by Greensburg’s payment of $31,000 to Thomas and Dorothy Scott as assignees of Ty-Wood’s claim.
 

 Monarch, whose judgment with interest against Ty-Wood amounted to $5,039.22, alleges that the prior assignments constituted unperfected security interests under Article 9 of the Uniform Commercial Code
 
 *
 
 and are subordinate to the claim of Monarch, which was without notice of the assignment.
 

 The court below, sitting without a jury, initially found in favor of Monarch, but reversed its position upon consideration of exceptions filed by Greensburg and held “the parties to the assignments intended that they effect an assignment, absolute and unqualified, of the assignor’s right to receive certain moneys ... in payment of the assignor’s debt to the assignee.”
 

 This finding, then, frames the sole issue on appeal: did the transactions between defendant Ty-Wood and the Scotts constitute security interests which were, under the Code, unperfected and therefore subordinate to appellant’s attachment, or were they absolute assignments in payment of a pre-existing debt, in which case the filing provisions of the Code are inapplicable.
 

 As stated in the comments to the Uniform Commercial Code: “The aim of the Article [9] is to provide a
 
 *72
 
 simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty. . . . [T]he article applies to all transactions intended to create security interests in personal property .. . .” 12 P.S. §9-101, comment, p. 333. The “principal test whether a transaction comes under this Article is: is the transaction intended to have effect as security?”
 
 Id.,
 
 §9-102, comment, p. 335. In the instant case, then, we must examine the business activities, the objectives and the relationship of the parties to ascertain this intent and on that basis determine whether the transactions in question legally constitute an absolute assignment or a security interest. Such a determination, i.e., whether certain facts as found by a trial court constitute a specific legal act, is proper for this court.
 
 Cf., Fiore v. Fiore,
 
 405 Pa. 303, 174 A. 2d 858 (1961) ;
 
 Bolton v. Stillwagon,
 
 410 Pa. 618, 190 A. 2d 105 (1963).
 

 The record discloses that from 1960 through January, 1964 Thomas Scott made loan advances to his brother Ross Scott and/or Ty-Wood Corporation totaling $57,582. The initial assignment of March 7, 1963 recites that Ty-Wood is entitled to approximately $30,-000 due on contract from Greensburg and that Ty-Wood is indebted to Thomas and Dorothy Scott in the amount of $25,000 “which money was used by the assignor for the completion of the contract.” The Assignment then states: “Ty-Wood Corporation does hereby .. . assign the sum of [$25,000] to the Assignees ... from the balance of the proceeds due and owing to it under the terms [of the contract with Greensburg]; that the said moneys will be paid to the Assignees under the terms of the . . . agreement, and assignment is hereby made of the aforementioned moneys in the sum of [$25,000].” The second assignment, on January 13, 1964, recites certain loans of $57,296 by the Scotts to
 
 *73
 
 Ty-Wood and assigns to the Seotts “. . . all moneys . . . due and owing by . . . Greensburg Plaza, Inc. ... to the said Ty-Wood Corporation.”
 

 There is testimony by Thomas Scott that the assignments were taken as “security” for loans made by him to his brother Ross Scott and Ty-Wood, but as the trial judge states in his opinion: “We have concluded from our careful review of the two written assignments in their entirety and the testimony taken at the trial that the only conclusion warranted is that the parties to the assignments intended that they effect an assignment, absolute and unqualified, of the assignor’s right to receive certain moneys from the named corporations to the assignee, in payment of the assignor’s debt to the assignee. We have reached this conclusion notwithstanding the presence in the record of testimony from Thomas Scott that the assignments were taken as ‘security’ for the loans made by him to his brother, Ross Scott, and his corporate alter ego, Ty-Wood. It is our considered judgment after a long and careful weighing of all the evidence that these statements of Thomas Scott cannot be given the precise legal meaning that each of these assignments was intended as ‘security’ or to create a ‘security interest’ as the terminology is used in the Uniform Commercial Code, so as to bring the assignments within the scope of Article IX. The words ‘secured’ and ‘security’ appearing in the record of testimony elicited from Thomas Scott, and the inferences therefrom, must fall before the weightier evidence consisting of the absolute and unqualified language of the assignments and the other evidence in the record that is consistent with the conclusion that the assignments were given in payment and not for security. In effect, we conclude that Thomas Scott’s use of the word ‘security’ was in the general sense of indicating that he [viewed] the assignments as
 
 assuring
 
 him of the moneys owed him by Ty-Wood
 
 *74
 
 because it entitled Mm to receive the moneys
 
 directly
 
 from
 
 his
 
 debtor’s presumably more financially responsible obligor.” (Emphasis in original.)
 

 We agree with the court below in its findings and in its application of the Code, that there must be an intent to create a security interest and not every transaction is governed by its filing provisions.
 

 Prom the above language of both the Code and the Official Comments it is apparent that the transaction in the instant case is properly excluded from the filing provisions.
 
 Accord, Spurlin v. Sloan,
 
 368 S.W. 2d 314 (Ct. App. Ky., 1963). We hold that these were absolute assignments in payment of a pre-existing debt and therefore were entitled to priority over appellant’s subsequent garnishment proceedings.
 

 The judgment of the court below is affirmed.
 

 Montgomery, J., concurs in the result.
 

 *
 

 Act of October 2, 1959, P. L. 1023, 12A P.S. §1-101 et seg.