**JOHN DEERE COMPANY, Appellant,**

v.

**Bobby G. NEAL, Appellee.**

No. 8408.

Court of Civil Appeals of Texas, Texarkana.

Dec. 7, 1976.

Richard A. Sayles, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellant.

John H. Davis, Allison & Davis, Levelland, for appellee.

CHADICK, Chief Justice.

This is a chattel paper * case. The trial court entered a take nothing judgment and it is affirmed.

* See Tex.Bus. & Comm.Code Ann. Sec. 9.105(a)(2) for definition.

## I

Appellee, Bobby G. Neal, defendant below, purchased a tractor from Hockley County Equipment Company in July, 1972. A cash down payment of $530.00 was made to the equipment company and a Retail Installment Contract-Security Agreement was executed providing for three installment payments; these to be made respectively on the 15th day of December, 1972, 1973 and 1974. The agreement allowed Neal to prepay the indebtedness before its due date. The first installment was timely paid by a check made payable to John Deere Co. and in February of 1973 Neal paid the equipment company $2,122.00 and was issued a John Deere Plow Company receipt at the equipment company place of business showing Neal's obligation under the agreement was paid in full. However, in July of 1972, a time prior to payment of the first installment and prior to the claimed payment in full in February 1973, the equipment company assigned the Retail Installment Contract-Security Agreement to Appellant, John Deere Company, plaintiff below.

John Deere Company, the assignee, did not receive the payment made by Neal at the equipment company office in February 1973. When the second installment fell due in December of 1973 John Deere Company notified Neal of his failure to pay and Neal asked the owner of the equipment company for an explanation. John Deere Company subsequently received payment but its records do not show who made the payment. Neal testified, apparently on a hearsay basis, that the equipment company's owner paid. When the last installment, $1,263.00, became due in 1974 and was not paid to John Deere Company suit was instituted.

## II

Neal's liability for payment of the last installment is the issue in this case. John Deere Company takes the stand that the law of negotiable instruments, Texas Business and Commerce Code, Chapter 3, applies to the transaction and that John Deere Company is a holder in due course and entitled to recover without regard to payment made to a non-holder and without necessity of notice to the maker, contending, however, that Neal had actual notice of the assignment of the chattel paper. Neal's position is that the law of Secured Transactions, Texas Business and Commerce Code, Chapter 9, governs and that he is an account debtor authorized to make payments to the creditor-assignor until notified that payment was to be made to the assignee.

## III

Section 9.102(a)(2) extends application of Article 9 "to any sale of accounts, contract rights, or chattel paper." The written assignment in this instance purports to ". . . sell and transfer this instrument to you . . . ." Comment under the section explains that its purpose is:

". . . to bring all consensual security interests in personal property and fixtures, with the exception of certain types of transactions excluded by Sections 9–103 and 9–104, under this Article, as well as sales of accounts, contract rights and chattel papers *whether intended for security or not* . . . ." (Emphasis added.)

See also 30 A.L.R.3rd, Uniform Commercial Code—Article 9, Sec. 7. John Deere Company correctly points out that the scope of Chapter 9 is limited by Section 9.104, which states:

"This chapter does not apply

.  .  .  .  .

(6) to a sale of accounts, contract rights or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts, contract rights or chattel papers which is for the purpose of collection only, or a transfer of a contract right to an assignee who is also to do the performance under the contract; . . ."

John Deere does not undertake to explain which of the Section 9.104(6) exemptions governs this transaction. Effort is made, however, to establish that Section 9.104(6), properly interpreted, excludes all types of nonfinancing sales. That such comprehensive exclusion was not the intent of the draftsman seems apparent. Comment 6 under this Section states:

"In general sales as well as security transfers of accounts, contract rights and chattel paper are within the Article (see Section 9–102). Paragraph (f) excludes from the Article certain transfers of such intangibles which, by their nature have nothing to do with commercial financing transactions."

The scope of Chapter 9 has been generally defined by Section 9.102, and specifically limited by Section 9.104. There is no apparent reason to give an expansive reading to the enumerated limitations. The transaction here does not come within these limitations, nor can it be said to have nothing to do with commercial financing.

John Deere Company's effort to avoid application of the general statement of scope of Chapter 9 and Section 9.102 on other grounds has no persuasive merit. *Lyon v. Ty-Wood Corporation*, 212 Pa.Super. 69, 239 A.2d 819 (1968), is cited as lending support to its position. That case held that an outright assignment of proceeds due under a contract, as opposed to an assignment to secure an indebtedness, is not covered by Chapter 9. The case is clearly distinguishable. Less obviously, but no less important, is the relative lack of relation to commercial financing in *Lyon* as compared to the case at bar.

The appellant argues that it is implied in *Citizens Bank of Corrigan v. J. M. Jackson Corporation*, 537 S.W.2d 120 (Tex.Civ.App. Houston—14th Dist.1976, no writ), that Section 9.318 is operative only in instances of assignments for security purposes. This analysis is not wholly accurate. That case dealt with an assignment of invoices by a debtor as security for a loan, and Section 9.318(c) was held applicable. But the case

is not concerned with the sale of chattel paper governed by Section 9.102 and Section 9.104.

In summary, this record presents an instance of an assignment of chattel paper. The assignment shows on its face that it is a part of a commercial financing transaction. Chapter 9 should apply.

IV

Neal contends that he discharged his indebtedness by making payment to his creditor, the assignor of the chattel paper, and takes refuge in Section 9.318(c), which states that the account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment thereafter is to be made to the assignee. See 79 C.J.S.Supp. Secured Transactions § 94, p. 302. John Deere Company attempts to avoid such provisions of the law by arguing in its reply brief that the appellee had notice of the assignment. John Deere Company admits that it has no direct or written evidence to show notice was given Neal. However, because Neal made his first installment payment by check payable to John Deere Company rather than to Hockley County Equipment Company, the assignor, John Deere Company, asserts that this fact together with other facts in the record established required notification.

Neither Section 9.318(c) nor Comment 3 thereunder describes with specificity the requisites of notice. The text of the section makes it clear that notice of assignment without notice that future payments are to be made to the assignee will not impose double liability on the obligor who pays an assignor. John Deere Company urges that bare actual notice of assignment is sufficient. *Manes Const. Co., Inc. v. Wallboard Coating Co., Inc.*, 497 S.W.2d 334 (Tex.Civ. App.Houston—14th Dist.1973, no writ), is cited as authority. In that case an account debtor who had actual notice by telephone and by letter was subjected to double liability when he persisted in making payments to the assignee.

Knowledge of facts from which Neal should have concluded that John Deere Company had a right to collect the indebtedness in question because of some arrangement with the equipment company falls short of the requirement of Section 9.318(c) that payment is to be made to the assignee. It is apparent from the record that Neal is an intelligent man but he is not shown to be so experienced in secured transactions as to be alerted by the facts in evidence that John Deere Company was in fact requesting payment to be made to it as assignee of the chattel paper. The cited section emphasizes the necessity of the assignee making its rights clear to a debtor by providing that notice to a debtor will be ineffective which does not reasonably identify the rights assigned. The trial judge's construction of the evidence appears reasonable and it cannot be said as a matter of law that Neal had actual notice at any relevant time that the John Deere Company, as assignee, required Neal to make payments directly to it.

V

No findings of fact or conclusions of law were requested or filed. In such cases, an appellate court is bound to affirm the judgment if it can be sustained on any reasonable theory supported by the evidence and authorized by law. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962); 4 McDonald's, Texas Civil Practice, Sec. 16.10(d). No error requiring reversal of the case is found. Accordingly, the judgment of the trial court is affirmed.