Opinion for the Court filed by Circuit Judge STARR.
 

 STARR, Circuit Judge:
 

 This is a bankruptcy case raising both issues of choice of law and commercial law. It is on appeal from a judgment of the District Court in favor of the trustee in bankruptcy for BKC, Inc. The District Court, applying District of Columbia law, held that the filing of a financing statement was necessary to perfect an assignment of funds, which is the critical event that has spawned the present controversy. Appellants Madison National Bank and Robert F. Comstock contend that (1) Maryland law should have been applied, and (2) that even if, as the District Court concluded, D.C. law applies, a financing statement was nonetheless not required. We conclude that the District Court correctly applied District of Columbia law, but that the court erred in holding that a financing statement was required to perfect the assignment.
 

 I
 

 On January 6, 1982, BKC, Inc. (“BKC”) owed Madison National Bank and Robert F. Comstock (“Madison”) $201,803.54.
 
 [1]
 
 BKC therefore assigned Madison the right to receive $200,000 from the total amount owed to BKC by the Saudi Arabian Army Air Defense Command (“ADC”). Madison agreed to accept the assignment, and stopped the accrual of interest on the debt as of January 6, 1982, the date of the assignment. On April 30, 1982, upon receipt of funds from ADC, BKC duly transmitted the $200,000 to Madison.
 

 Five days later, on May 4, 1982, BKC filed a petition under Chapter 7 of the Bankruptcy Code. 11 U.S.C. §§ 1-151326 (1982 & Supp. Ill 1985). Mr. Goldstein, the trustee in bankruptcy (“Trustee”), initiated this action on February 8, 1983 in an effort to recover the $200,000 alleging that the transfer was voidable under section 547 of the Bankruptcy Code. 11 U.S.C. § 547.
 

 Under section 547, a transfer of property in satisfaction of a preexisting debt made within ninety days prior to filing for bankruptcy is voidable.
 
 [2]
 
 Madison claims that the transfer at issue occurred when the assignment was executed by the parties— prior to the 90-day preference period. The Trustee claims that the transfer occurred when Madison received the $200,000 — within the 90-day preference period.
 

 II
 

 For purposes of the Bankruptcy Code, the time at which the transfer occurred
 
 *1072
 
 turns on whether a financing statement under Article 9 of the Uniform Commercial Code was necessary to perfect the assignment. Madison did not file a financing statement; thus, if one was indeed required, then the “transfer” for purposes of section 547 did not occur until Madison actually received payment (which was, of course, well within the 90-day statutory period). If, on the other hand, a financing statement was not required, then the transfer occurred when the assignment was executed (outside the 90-day period).
 

 Applying Maryland law, the Bankruptcy Court held that, under section 9—104(f), the filing of a financing statement was not required to perfect the assignment.
 
 [3]
 

 Golstein v. Madison National Bank
 
 (Bankr. Order dated December 30, 1983) at 6, Joint Appendix (“J.A.”) at 6. The Bankruptcy Judge therefore entered judgment in Madison’s favor.
 

 On appeal, the District Court held that the Bankruptcy Court had erred in applying Maryland law. Instead, the court concluded, District of Columbia law applied.
 
 Goldstein v. Madison National Bank,
 
 No. 84-0361 (D.D.C. Memorandum Opinion May 31, 1985) at 4-5, J.A. at 4-5. The District Court went on to hold that under section 9-104(f) of District of Columbia law, a financing statement was required to perfect the assignment.
 
 Id.
 
 at 5-6, J.A. at 5-6. The court therefore remanded the case to the Bankruptcy Court for entry of judgment in favor of the Trustee.
 
 [4]
 

 Id.
 
 at 6, J.A. at 6.
 

 Madison challenges the District Court’s decision on two grounds:
 
 first,
 
 that Maryland law, not District of Columbia law, should have been applied; and
 
 second,
 
 that even under District of Columbia law, a financing statement was not necessary to perfect the assignment.
 
 [5]
 

 Ill
 

 At the outset, we note that the District Court properly looked to District of Columbia choice of law principles to determine which law to apply.
 
 Klaxon Co. v. Stentor Electric Mfg. Co.,
 
 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Court, applying D.C.’s general choice of law provision, found that the transaction bore an appropriate relation to the District, and therefore held that D.C. law applied.
 
 [6]
 

 
 *1073
 
 Madison argues, however, that the District Court erred in its choice-of-law methodology. As Madison sees it, the court should have applied the specific choice of law provision of section 9-103 of the District of Columbia Commercial Code, which governs the effect of perfection of a security interest.
 
 [7]
 
 Section 9-103 directs the court to apply the law of the jurisdiction where the debtor is located, which, in this case, is Maryland.
 

 It seems to us that for the specific choice of law provision of Article 9 to apply, the transaction must fall within the purview of Article 9. Section 104(f) of Article 9 excludes certain transactions from Article 9’s scope. If the transaction at issue is excluded, it would be odd indeed for Article 9’s choice of law provision to apply. If Article 9 were not in fact triggered, then the general choice of law provision of the U.C.C. would apply.
 

 We thus must look to section 9-104(f) to determine whether the present transaction is outside Article 9’s compass. Before we do, we observe that the applicability of section 9-104(f) also controls the second issue in this case — whether a financing statement was in fact necessary to perfect the assignment. For, if the transaction fell within section 9-104(f), and therefore outside Article 9’s ambit, then a financing statement was not required, and the transaction occurred when the assignment was executed, prior to the 90-day preference period of section 547.
 

 At the time the assignment was made, section 9-104(f) of D.C. law provided as follows:
 

 [This Article does not apply] to a sale of accounts, contract rights or chattel paper as a part of a sale of the business out of which they arose, or an assignment of accounts, contract rights or chattel paper which is for the purpose of collection only, or a transfer of a contract right to an assignee who is also to do the performance under the contract[.]
 

 28 D.C.Code Ann. 9-104(f) (1981). Two months after the assignment, section 9-104(f) was amended to effect, verbatim, the changes suggested years earlier by the Conference of Commissioners on Uniform States Laws (the 1972 amendments to the U.C.C.). Section 9-104(f), as belatedly amended by the District of Columbia, now provides:
 

 [This Article does not apply] to a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness^]
 

 28 D.C.Code Ann. 9-104(f) (Supp.1985). Madison contends, contrary to the District Court’s holding, that the foregoing amendment represented merely a clarification, not a change, in the law. For several reasons, we agree.
 

 First, the leading cases interpreting the scope of Article 9 prior to the 1972
 
 *1074
 
 U.C.C. amendments
 
 [8]
 
 held that “an assignment for the payment of a past due obligation” did not create a “security interest” and that therefore such an assignment was perfected upon execution, without the filing of a financing statement.
 
 Spurlin v. Sloan,
 
 368 S.W.2d 314, 316 (Ky.1963);
 
 accord National Surety Corp. v. State National Bank of Frankfort,
 
 454 S.W.2d 354, 357 (Ky.1970);
 
 Cohen v. Casillo,
 
 33 Conn. Sup. 617, 364 A.2d 858, 861 (1976);
 
 Lyon v. Ty-Wood Corp.,
 
 212 Pa.Super. 69, 239 A.2d 819, 821-22 (Pa.1968). Thus, even under pre-1972 U.C.C. law, the BKC assignment did not create a security interest so as to trigger the applicability of Article 9.
 

 Second,
 
 Spurlin’s
 
 interpretation of Article 9’s scope was expressly approved in the Official Comments to the 1972 Amendments to Article 9. Uniform Commercial Code 1978 Official Text, § 9-104(f) Comment No. 6 (West 1978) (“[T]his paragraph excludes from [Article 9] such transactions as that involved in
 
 Lyon v. Ty-Wood Corporation,
 
 212 Pa.Super. 69, 239 A.2d 819 (1968), and
 
 Spurlin v. Sloan,
 
 368 S.W.2d 314 (Ky.1963).”).
 

 Third, the conclusion that the 1972 amendment was intended only as a clarification — not as a modification to the law — is further buttressed by section 11-108 of the enactment that amended section 9-104(f). Section 11-108 provides: “Unless a change in the law has clearly been made, the provisions of this act shall be deemed declaratory of the meaning of the Uniform Commercial Code, effective January 1, 1965.” 28 D.C.Code Ann. § 11-108 (Supp.1985). In light of the
 
 Spurlin
 
 line of cases and the UCC drafters’ express sanction of their interpretation of Article 9’s scope, we are persuaded that a change in the law has not “clearly been made” by the amendment of section 9—104(f), and that the amendment was intended as “declaratory of the meaning” of that section. Under the express language of section 9 — 104(f), as amended, “a transfer of a single account to an as-signee in whole or partial satisfaction of a preexisting indebtedness” is excluded from Article 9.
 

 We therefore are persuaded that the District Court was correct in applying D.C.’s
 
 general
 
 choice of law provision rather than the specific provision of Article 9, and that the District Court correctly applied D.C. law, as the transaction bore an appropriate relation to the District of Columbia.
 
 [9]
 
 However, we are constrained to conclude that the District Court fell into eri’or in determining that the filing of a financing statement was necessary to perfect the assignment. In our view, the transfer occurred in law when the assignment was executed. We therefore hold that, under District of Columbia law, if the assignment was absolute, Madison is entitled to the $200,000, as the transfer occurred prior to section 547’s 90-day preference period.
 

 By virtue of its conclusion, the District Court did not have occasion to address the second issue advanced by the Trustee, namely whether the assignment by BKC was an absolute assignment or, in contrast, merely an assignment for security. If the latter, then under the Trustee’s theory the transfer did not occur until BKC received the funds from ADC, within the statutory 90-day period. Accordingly, we vacate and remand the case for further proceedings in the District Court consistent with this opinion.
 

 It is so ordered.
 

 [1]
 

 . Interest on the debt was accruing at the rate of approximately $2025 per month.
 

 [2]
 

 . 11 U.S.C. § 547 provides, in pertinent part:
 

 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property
 

 [[Image here]]
 

 (4) made—
 

 (A) on or within 90 days before the date of the filing of the petition....
 

 [3]
 

 . Section 9-104(f) provides:
 

 [This title does not apply to] a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness[.]
 

 Md.Comm.Law Code Ann. § 9-104(f) (Supp.1985).
 

 [4]
 

 . Madison appealed to this Court from the District Court’s decision. The appeal was dismissed because the District Court’s remand for entry of judgment was not a final order within the meaning of 28 U.S.C. § 158(d) (Supp. III 1985).
 
 Goldstein v. Madison National Bank, et al.,
 
 No. 85-5795 (D.C.Cir. Oct. 8, 1985).
 

 The Bankruptcy Court entered judgment against Madison on August 6, 1985. Madison then appealed to the District Court. The District Court affirmed the judgment on March 13, 1986. It is from that judgment that Madison now appeals.
 

 [5]
 

 . Madison also claims that the District Court erred in even considering the choice of law question because the Trustee failed to raise the issue before the Bankruptcy Court. Madison Brief at 13. We disagree. The parties’ pleadings were based on District of Columbia law, Madison never amended its answer to assert that Maryland law applied, and the Trustee advised the Bankruptcy Judge that the case presented a choice of law issue. Further, application of the correct law is surely in the interest of justice, and well within the federal appellate court’s discretion to raise and decide on its own initiative.
 
 See Singleton v. Wulff,
 
 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976);
 
 accord Roofing & Sheetmetal Services Inc. v. LaQuinta Motor Inns, Inc.,
 
 689 F.2d 982, 989-90 (11th Cir.1982).
 

 [6]
 

 . D.C.’s general choice of law provision provides:
 

 (1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to the District and also to a state or nation the parties may agree that the law either of the District or of such state or nation shall govern their rights and duties. Failing such agreement this subtitle applies to trans
 
 *1073
 
 actions bearing an appropriate relation to the District.
 

 (2) Where one of the following provisions of this subtitle specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified:
 

 Rights of creditors against sold goods, section 28:2-402.
 

 Applicability of the article on bank deposits and collections, section 28:4-102.
 

 Bulk transfers subject to the article on bulk transfers, section 28:6-102.
 

 Applicability of the article on investment securities, section 28:8-106.
 

 Perfection provisions of the article on secured transactions, sections 28:9-102 and 28:9-103.
 

 28 D.C.Code Ann. § 1-105.
 

 [7]
 

 . Section 9-103 provides:
 

 The law (including the conflict of law rules) of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or non-perfection of the security interest.
 

 28 D.C.Code Ann. § 9-103(3) (Supp.1985).
 

 [8]
 

 . The courts were interpreting the language of section 9 — 104(f) prior to its amendment.
 

 [9]
 

 . The assignment was prepared and executed in the District, the debt was incurred and paid in the District, and two of the three parties to the transaction are based in the District.