In re George Calvin RANKIN, Jr. a/k/a "Buzz Rankin" and Dorothy Rankin, Husband and Wife, Debtors.

**FIRST NATIONAL BANK OF MERCER COUNTY, Plaintiff,**

v.

George Calvin RANKIN, Jr. a/k/a "Buzz Rankin" and Dorothy Rankin and Henry S. Moore, Trustee, Defendants.

**Bankruptcy No. 81–00626E. Adv. No. 82–0388.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 12, 1989.

**440**

Henry E. Sewinski, Sharon, Pa., for plaintiff.

John Edward Calior, Hermitage, Pa., for debtors.

Henry S. Moore, Grove City, Pa., trustee.

---

1. Relief from Stay is now sought by Motion practice, Bankruptcy Rule 4001 and 9014.

## OPINION AND ORDER

WARREN W. BENTZ, Bankruptcy Judge.

### Case Summary

The within Complaint was instituted by the First National Bank of Mercer County ("Bank") to obtain relief from the automatic stay [1] to receive lifetime monthly payments owed to the debtor under a contract ("NYLIC") with New York Life Insurance Company ("Company"). The payment rights were assigned by the debtor to the Bank as collateral for loan obligations.

The debtor also continues to earn renewal commissions on insurance policies sold by him prior to the filing of this bankruptcy. The Bank claims no interest in the renewal commissions.

The debtor, Rankin, claims entitlement to the renewal commissions and the NYLIC monthly payments, asserting that these Chapter 7 proceedings eliminated any right the Bank had by reason of the assignment.

The Chapter 7 Trustee's position is that both the NYLIC monthly payments and the renewal commissions are assets of the bankruptcy estate to be administered by him.

Two previous Memoranda and Orders of this court were issued by the Honorable William B. Washabaugh, Jr. on May 18, 1985, 52 B.R. 81 (Bankr.W.D.Pa.1984), and June 26, 1985, 52 B.R. 83 (Bankr.W.D.Pa. 1984), which in essence, held for the Bank. An appeal was taken to the District Court and the case was remanded back to us for findings of fact and conclusions of law, with specific instructions to make findings of fact and conclusions of law on the question of whether the Bank was a secured creditor.[2]

Upon reconsideration and a review of the record, this court shall vacate both prior orders and enter this Opinion and Order.

### Facts

The facts have been stipulated by the parties as follows. The debtor represented

---

2. This Opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

the Company as an insurance salesman. In that capacity, he applied to the Company to participate in a supplemental compensation plan, NYLIC. The debtor became eligible for NYLIC on June 21, 1974.

NYLIC provided the debtor specified benefits based on production results in addition to the usual commissions. NYLIC pays monthly income payments in the amount of $969.07 to the debtor. These payments are vested and unreducible although payable in the future.

Pursuant to the Field Underwriter's contract between the debtor and the Company, the debtor is entitled to renewal commissions when a policy holder renews the policy and pays the renewal of premium.

The debtor borrowed monies from the Bank several years prior to the filing of the bankruptcy. The debtor gave the Bank a mortgage on commercial property at 59 Hadley Road, Greenville, Pennsylvania (the "Real Property") as collateral for the loan. The debtor also assigned to the Bank all of his interest and right to the proceeds in NYLIC (but not his right to future renewal commissions).

At the time of filing of the bankruptcy petition on October 15, 1981, the Bank was owed $130,827.98. The Real Property was subsequently sold at Sheriff Sale reducing the deficiency owed to the Bank to $55,-060.20. The Bank contends that this deficiency is secured by assignment of the NYLIC. As of July 2, 1985, the Company had paid from NYLIC $3,492.82 to the debtor and $20,323.19 to the Trustee since the filing of this petition in bankruptcy. (No payments were made on renewal commissions and those amounts are held by the Company.) All additional monies due under NYLIC and the renewal commissions are being held by the Company in escrow until further order of this court.

## Issue

The issue for resolution before this court is whether the proceeds of the NYLIC and the renewal commissions are payable to the Bank, the Trustee or the debtor.

## Discussion
### Renewal Commissions

■ Section 541(a)(6) of the Bankruptcy Code excludes from the bankruptcy estate "earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). "Where a debtor derives postpetition commissions under a prepetition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate." *In re Zahneis*, 78 B.R. 504, 505 (Bankr.S.D. Ohio 1987). "Where, however, the debtor essentially fulfills all his obligations prior to the filing of his petition, the postpetition commissions accruing therefrom will be deemed property of the estate." *Id.*

The general rule is that renewal commissions are not simply payment for sale of the insurance policy, but compensation for other services in the preservation of the Company's business. *Insley v. State Mutual Life Assur. Co.*, 334 Pa. 368, 5 A.2d 544 (1939). Such commissions are earned by the agent for "servicing" of these policies. *Id.* However, this rule does not apply if the contract provides for the payment of renewal premiums after the termination of the contract. *Id.*

Section 17 of the contract between the debtor and the Company provides for payment of renewal commissions after the termination of the contract. The debtor's contract was terminated as of August 8, 1981, prior to the filing of this petition in bankruptcy.

No additional effort on the part of the debtor is required to earn renewal commissions. Since the debtor fulfilled all his obligations prior to the filing of this petition in bankruptcy, the renewal commissions represent payment for past services and are property of the bankruptcy estate. The Bank claims no interest in these funds. Therefore, the renewal commissions shall be turned over to the Trustee.

### NYLIC

NYLIC is a system of compensation to which the parties are bound by contract, whereby the Company pays monthly sup-

plemental payments in addition to regular commissions to its eligible soliciting agents. The payment amounts are computed in accordance with a formula based on the duration of the agent's membership in NYLIC and the amount of qualifying insurance sold by said agent in specified previous years which has remained in force.

After 20 consecutive years of membership in NYLIC, a member receives a monthly income for life. The debtor's lifetime monthly income is $969.07. The Bank claims a security interest in this monthly payment by reason of assignment from the debtor dated June 19, 1975.

NYLIC contains a provision prohibiting any assignment of the right to receive payments thereunder in the absence of the Company's consent.

This court finds that the Company consented to the assignment by its letter dated July 24, 1975 where it was stated that the assignment was being placed on file and the Company inserted the "appropriate language" in the assignment prior to returning a copy to the Bank. Further, the Company waived any objection to the absence of its written consent when it tendered payments pursuant to the assignment.

The U.C.C., Secured Transaction Division ("U.C.C."), applies to any transaction which is intended to create a security interest in personal property, including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights.[3] 13 Pa.C.S.A. 9102(a)(1).

"Account" is defined as a right to payment for goods sold or services rendered which is not evidenced by an instrument or chattel paper. 13 Pa.C.S.A. § 9106. There is no instrument involved here since "instrument" is a negotiable instrument or similar instrument. 13 Pa.C.S.A. § 9105. Chattel paper or a writing which evidences a monetary debt and a security interest in specific goods is not involved. 13 Pa.C.S.A. § 9105. Thus, NYLIC is an account as defined in the U.C.C.

Generally, a financing statement is required to be filed in order to perfect a security interest. 13 Pa.C.S.A. § 9302. The Bank failed to file a financing statement. The Bank contends it was not required to file a financing statement under Article 9 by virtue of § 9302(a)(5), § 9104(4) and § 9302(a)(3).

■ 13 Pa.C.S.A. § 9302(a)(5) provides that the filing of a financing statement is not required to perfect a security interest in "an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor."

The debtor had only one account. (An insignificant second account exists for renewal commissions.) The Bank invites us to find that since it needed only to rely on the account for a fraction of the total indebtedness of the debtor to the Bank, the assignment was not for a significant part of the outstanding account of the debtor. We find the position of no merit because the assignment, by its plain language, assigned *all* of the account. The entire account was available to the Bank in the event its other collateral proved to be insufficient. Since all of the account was assigned to the Bank and since it was the debtor's only account of substance, a financing statement was required.

■ The Bank points to the 1972 amendments of the U.C.C. at 13 Pa.C.S.A. § 9104(6) which excludes from Article 9 the "transfer of a single account to an assignee in whole or partial satisfaction of a pre-existing debt." Pennsylvania had not adopted the 1972 amendment when this assignment was given by the debtor, but, even if it had, the comment to that section indicates it intends to exclude from the Article transfers which "by their nature, have nothing to do with commercial financing transactions." That is not the situation in the instant case. The debtor's assignment of his interest in NYLIC was not an outright assignment; it was intended as collateral for a loan, and therefore, was a part of a commercial financing transaction. Hence, § 9104(6) does not excuse the Bank from the filing requirement to perfect its security interest.

---

**3.** The 1982 amendments to the U.C.C. deleted "or contract rights" from this section.

The Bank further asserts that Article 9 is made inapplicable by 13 Pa.C.S.A. § 9104(4) which exempts from its coverage, "a transfer of a claim for wages, salary, or other compensation of an employee."

We are not persuaded that the debtor was an employee whose compensation would fall within § 9104(4). The Field Underwriter's Contract between the Company and the debtor expressly defines the relationship as follows:

5. Neither the term "Field Underwriter" (used herein solely for convenience in designating one of the parties) nor anything contained herein or in any of the rules or regulations of the Company shall be construed as creating the relationship of employer and employee between the Company and the Field Underwriter. Subject to the provisions hereof and within the scope of the authority hereby granted, the Field Underwriter, as an independent contractor, shall be free to exercise his own discretion and judgment with respect to the persons from whom he will solicit applications, and with respect to the time, place, method and manner of solicitation and of performance hereunder.

Further, the Company brochure describing the NYLIC program states:

Every Field Underwriter of New York Life Insurance Company eligible to qualify for membership in Nylic is in business for himself. He is his own master. Within the authority granted by his Field Underwriter's Contract, and subject to its provisions, the Field Underwriter is free to operate without direction and control by the Company as to the persons from whom he will solicit applications and as to the time, place, method and manner of solicitation and of performance under such contract. To succeed, the Field Underwriter must demonstrate the executive ability necessary to direct and control effectively the performance of his work.

The Field Underwriter's freedom of action and the fact that his earnings are measured by the results produced by him are two of the greatest incentives for persistent and sustained production of new business. Nylic offers to each eligible Field Underwriter the opportunity, year after year, under specified conditions and rules, to qualify for and to receive specified benefits based on his actual production results. Such benefits are in addition to the commissions which are provided for in each Field Underwriter's Contract.

Thus, it is clear that the debtor operated as an independent contractor, in business for himself. His earnings were not wages, salary or other compensation of an employee exempted from Article 9 by § 9104(4).

The parties filed briefs at the court's request on whether the NYLIC account might be a trust and, therefore, excluded from the filing requirements of Article 9 by virtue of the exception at § 9302(a)(3) which negates the filing requirement to perfect a security interest "created by an assignment of a beneficial interest in a trust or a decedent's estate."

The existence of a trust requires property that is subject of the trust and a trustee who has a fiduciary relationship concerning this property with the interest of another, the beneficiary. *See Pennsylvania Law Encyclopedia, Trusts*, Section 1, 11–23.

The elements of a trust are absent here. NYLIC is not an interest in a beneficial trust and, therefore, § 9302(a)(3) is inapplicable.

In order to have a valid security interest under Article 9, the party claiming the interest must have perfected that interest. *Petron Trading Co. v. Hydrocarbon Trading and Transport Co., Inc.*, 663 F.Supp. 1153 (E.D.Pa.1986). When the collateral in which a party holds a security interest is an account, the only way to perfect the security interest is by filing a financing statement. *Id.*, 13 Pa.C.S.A. § 9302. It is undisputed that the Bank did not file a financing statement. The exceptions to the filing requirement asserted by the Bank are of no merit.

The trustee has an interest superior to the claimants if the claimant's security interest in the bankrupt's assets were not perfected. *In re Komfo Products Corp.*, 247 F.Supp. 229 (E.D.Pa.1965).

The Bank failed to meet the filing requirements under 13 Pa.C.S.A. § 9302 and does not have a secured interest in the payments under NYLIC, but is a general creditor as to the balance of its claim against the debtor.

Having found that NYLIC is not a pension, the debtor may not claim an exemption pursuant to 11 U.S.C. § 522(d)(10)(E).

It is accordingly

ORDERED that:

1. The prior orders of June 26, 1985 and May 18, 1985 are hereby vacated.

2. The New York Life Insurance Company is hereby directed to forward all renewal commissions and NYLIC payments to the Trustee to be held pending final distribution in this bankruptcy proceeding.

3. The First National Bank of Mercer County is to be afforded treatment as a general unsecured creditor on the balance of its claim.

4. All parties are to account to the trustee for all payments made or owing since the commencement of this case on October 15, 1981, it being contemplated that all payments made since that date be directed to and be held by the Trustee.