In re David C. **BERRY**, Debtor.

Wm. Keenan **STEPHENSON, Jr.,**
**Trustee, and David C. Berry,**
**Debtor, Plaintiffs,**

v.

**FIRST UNION NATIONAL BANK OF**
**SOUTH CAROLINA, Defendant.**

**Bankruptcy No. 95–72876.**
**Adv. No. 95–8138.**

United States Bankruptcy Court,
D. South Carolina.

Nov. 7, 1995.

John L. McCants, Ellis, Lawthorne, Davidson & Sims, P.A., Columbia, SC, for plaintiffs.

Richard R. Gleissner, Finkel, Goldberg, Sheftman & Altman, P.A., Columbia, SC, for defendant.

## MEMORANDUM AND ORDER

### J. BRATTON DAVIS, Chief Judge.

This adversary proceeding[1] was commenced by the trustee, Wm. Keenan Stephenson (the "Trustee"), and the debtor, David C. Berry ("Berry"), (1) to determine the validity or extent of a lien or interest in property, and (2) to avoid, pursuant to 11 U.S.C. § 544[2 & 3], the debtor's transfer of an interest in property of the debtor to the defendant.

### JURISDICTION

The adversary proceeding arises out of and relates to Berry's Chapter 13 case filed under the United States Bankruptcy Code. (11 U.S.C. § 101 *et seq.*) It is a core proceeding, 28 U.S.C. § 157(b)(2)(K), over which this Court has jurisdiction. 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 544.

### FACTS

Berry, as an insurance agent for Colonial Life and Accident Insurance Company, Inc. ("Colonial Life"), receives compensation based upon the insurance policies that he sells and the insurance policies that are sold by the sales representatives whom he supervises on behalf of Colonial. Berry also receives compensation, known as renewal commissions, when policies that he has previously sold are renewed.

On July 26, 1993, Berry executed a negotiable promissory note (the "Note") to First Union National Bank of South Carolina ("First Union") wherein Berry promised to repay First Union the sum of $51,963.36, plus interest, on a monthly basis in accordance with the terms and conditions of the Note. The Note, reflecting that Berry was giving a security interest in an "assignment of renewals," provides, in part:

> Security. I am giving a security interest in:
>
> _____ the goods being purchased.
>
> _X_ other (describe):
>
> ASSIGNMENT OF RENEWALS.
>
>    \*      \*      \*      \*      \*      \*

---

1. Federal Rule of Bankruptcy Procedure 7001 provides in relevant part:

   An adversary proceeding is governed by the rules of this Part VII. It is a proceeding.... (2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)....

2. 11 U.S.C. § 544 provides in relevant part:

   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

      \*      \*      \*      \*      \*      \*

   (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists;
   . . .

3. Further references to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

## PROPERTY AS SECURITY

To secure payment of this Note, I grant you a security interest in the collateral described below or in the Mortgage as indicated by the date below or on Schedule A, plus all additions, replacements or accessions to, and proceeds of the collateral. This collateral will secure any other loans with you, now or in the future unless the collateral is used as a principal dwelling or household goods. Any additional collateral is listed on the attached Schedule A.

## ASSIGNMENT OF RENEWALS FROM COLONIAL LIFE INSURANCE COMPANY

\*    \*    \*    \*    \*    \*

In conjunction with the Note, Berry assigned his renewal commissions by entering into an agreement with First Union which states that Berry:

> ... does hereby sell, assign, transfer, set over and deliver to First Union National Bank all of the right, title and interest of the undersigned in and to any of the renewal commissions ... This assignment is made as security for a loan this day made by the Bank to the undersigned, and is security for any and all renewals or extensions of said loan, or any part thereof.

First Union did not file a UCC financing statement with the South Carolina Secretary of State or other registry. The agreement was forwarded to Colonial Life which began making the monthly payments directly to First Union.

On May 10, 1994, Berry refinanced the Note with First Union by increasing the amount and extending the terms of payment, and signed another agreement assigning his renewal commissions. The language regarding security did not appear in the new agreement although the Note's language regarding security did remain the same. Again, First Union did not file a UCC financing statement. The May 10, 1994 agreement was forwarded to Colonial Life which began making the monthly payments directly to First Union.

On June 1, 1995, Berry filed his Chapter 13 case.

Thereafter, this adversary proceeding was commenced by the Trustee and Berry in which they contend that, although the assignment of the renewal commissions afforded First Union a security interest therein subject to Article 9 of the Uniform Commercial Code ("Article 9"), First Union's failure to file a UCC financing statement rendered the assignment unperfected, *ergo,* avoidable by the trustee under § 544.

Although conceding that it did not file a UCC Financing statement, First Union contends that, because the assignment is an absolute assignment which did not create a security interest, First Union is not required by Article 9 to file a financing statement. In support of this contention First Union says that "[a]n assignment is an immediate, complete and irrevocable change of ownership in which the assignor loses all control over the fund. The total relinquishment of all rights is required for a true assignment and if the transfer is less than absolute, the transfer is a not an assignment ... Assignments are not security interests and perfection is not required."

### *ISSUE*

The issue is whether *vel non* the debtor's assignment of renewal commissions created a security interest for First Union which is avoidable by the trustee. And that has raised three questions:

### I

*May the Assignment of the Renewal Commissions Create a Security Interest Covered by Article 9 of the Uniform Commercial Code?*

The objective of the Uniform Commercial Code is "to bring all phases [of commercial transactions] under one statute and to simplify, clarify, modernize and make uniform this law." S.C.Code Ann.Title 36, Commercial Code, Background and Introduction,

p. 2.[4] The "fundamental objective" of Article 9 of the Uniform Code "[is to] provid[e] uniform and simplified rules governing chattel security which meets modern commercial needs." S.C.Code Ann.Title 36, Commercial Code, Background and Introduction, p. 14. "... Article 9 rejects any distinction based on form or designation of the device employed.... Consistent with this general functional rather than formal and conceptual approach, Article 9 states substantive rules without regard to the ancient controversy over whether the secured party acquires 'title' to collateral or a 'mere lien'." S.C.Code Ann.Title 36, Commercial Code, Background and Introduction, p. 14.

■ Although an assignment at common law divested an assignor of all rights and title to property, the Uniform Commercial Code brings assignments for security within the coverage of Article 9 regardless of title. *Bank of Cave Spring v. Gold Kist, Inc.,* 173 Ga.App. 679, 327 S.E.2d 800 (1985).

(1) Except as otherwise provided in Section 36-9-104 on excluded transactions, this chapter applies:

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents.... accounts ...

(2) This chapter applies to security interests created by contract including pledge, assignment, chattel mortgage....

S.C.Code Ann. § 36-9-102.

This court has noted that Article 9 applies to assignments of account. See *In re Car-*olina Utilities Supply Co., Inc.,* 118 B.R. 412 (Bankr.D.S.C.1990) and *In re Flowers,* 78 B.R. 774 (Bankr.D.S.C.1986).

Berry and the Trustee contend that the assignment of the renewal commissions is an assignment of accounts. See *In re Rankin,* 102 B.R. 439 (Bankr.W.D.Pa.1989); § 36-9-106. If it is a security interest, § 36-9-302[5] a financing statement must, for perfection, be filed, and if not filed, the Trustee may avoid the assignment. § 544. First Union does not take issue with that conclusion.

■ First Union's citation of *Matter of Armando Gerstel, Inc.,* 65 B.R. 602 (S.D.Fla. 1986)[6] and *In re Moskowitz,* 14 B.R. 677 (S.D.N.Y.1981) for the proposition that "[a]ssignments are not security interests and perfection is not required" is of no avail here. Neither case supports First Union's cause; they are distinguishable on the facts. In each case there was an assignment of an insurance claim. Such an assignment is specifically excluded from Article 9 by § 36-9-104(g).[7] In *Gerstel,* the debtor, who had suffered a theft loss, assigned the proceeds from his insurance policy to a creditor in payment of an antecedent debt. In *Moskowitz,* an insurance carrier, pursuant to an assignment clause in the policy, paid the claim of a hospital which had provided care directly to the carrier's insured who later filed for relief under the Bankruptcy Code. The trustee in each of those cases, with the "strong arm" power afforded by § 544, attempted to avoid the transaction, but was denied relief because the relevant state law

---

4. South Carolina has adopted the Uniform Commercial Code as set forth in S.C.Code Ann. § 36-1-101, *et seq.*

5. Section 36-9-302 provides:

(1) A financing statement must be filed to perfect all security interests except the following ... [hereafter follow several exceptions not applicable to this adversary proceeding].

6. In *Matter of Armando Gerstel, Inc.* the district court affirmed the bankruptcy court's decision that the trustee could not avoid the assignment as being unperfected under Article 9. The bankruptcy court concluded that an assignment is not a security agreement, therefore, no perfection was required by the assignee. The district court affirmed the bankruptcy court on the clearly

erroneous standard, noting, that, while the bankruptcy court was correct in its result, it was incorrect in its reasoning. The district court noted that the more correct reasoning was that an assignment of an insurance claim is specifically excluded by Article 9 and a assignment of an account to satisfy an antecedent debt is specifically excluded by Article 9. *Id.* at 605.

7. Section 36-9-104 provides in part:

This chapter [Article 9] does not apply:

\* \* \* \* \* \*

(g) to a transfer of an interest in or claims in or under any policy of insurance, except as provided with respect to proceeds (Section 36-9-306) and priorities in proceeds (Section 36-9-312); ...

excluded the assignment of insurance proceeds from the purview of Article 9.

To the extent that a transfer of an interest in personal property for security is not specifically excluded, Article 9 is intended to cover the transfer. S.C.Code Ann. § 36–9–102 and S.C.Code Ann.Title 36, Background and Introduction, p. 14. One's realization that an assignment may be subject to Article 9, is made easier when one focuses on the statutory exclusions to Article 9 relevant to assignments of an interest in accounts.[8] Section 36–9–104(f) excludes from Article 9 "an assignment of accounts for the purpose of collection only ... [and] a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting debt." Those exclusions of Article 9 do not cover the item extant in this adversary proceeding: an assignment of accounts for security.

Thus, it reasonably may be deduced that an assignment of accounts for security, not being specifically excluded by the statute, may create a security interest which is governed by Article 9 of the UCC.

## II

*Did Berry's Assignment of the Renewal Commissions to First Union Create for First Union a Security Interest in Berry's Accounts?*

Having concluded that an assignment of an account for security may be subject to Article 9, we now conclude that Berry's assignment gave First Union a security interest in Berry's accounts, *i.e.* his renewal commissions.

In Section 36–1–201(37) of the Uniform Commercial Code a security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Berry's assignment fits the definition—there is an interest, granted by the assignment, in personal property (the renewal commissions), which se-

cures[9] the payment of an obligation, *i.e.* the Note.

*In re Carolina Utilities Supply Co., Inc.,* 118 B.R. at 415–16, (Bankr.D.S.C.1990), citing *In re Evergreen Valley Resort, Inc.,* 23 B.R. 659 (D.Me.1982) and *Major's Furn. Mart v. Castle Credit Corp.,* 602 F.2d 538 (3rd Cir.1979), lists the items considered by the court when it determined whether an assignment is an absolute one or one intended as security:

1. A security interest is indicated where the assignee retains a right to a deficiency on the debt. (citations omitted)

2. A security interest is also indicated when the assignee acknowledges that his rights in the assigned property would be extinguished if the debt owed were to be paid through some other source. (citations omitted)

3. ... A security interest is indicated if the assignee must account to the assignor for any surplus received from the assignment over the amount of the debts. (citations omitted)

4. Evidence that the assignor's debt is not reduced on account of the assignment is also evidence that the assignment is intended as security.

5. Finally, the contract language itself may express the intent that the assignment is for security only. (citations omitted) In contrast, assignments have been found to be absolute transfers where the assignments have been found to be absolute transfers where the assignment operates to discharge the underlying debt. (citations omitted)

*Id.* at 415–16.

The application of these factors to the assignment in the proceeding at bar establishes that Berry's assignment was intended as security:

---

8. Article 9 encompasses a wide range of interests in personal property, but excludes, from the filing requirement, some items of local interests, such as automobile titles, landlord liens, and some items of federal interests, such as airplane titles and ship titles.

9. Black's Law Dictionary, p. 1214, 5th ed., defines the word "secure" to mean "to assure of payment."

First, First Union's representative admitted that First Union would have a deficiency claim should the renewal commissions not satisfy the Note. Despite First Union's argument that the parties expected the Note to be repaid from the commissions only, the fact is that Berry obligated himself to pay the note regardless of the sufficiency of the renewals.

Second, First Union admitted that the payment of the Note would extinguish First Union's rights in the commissions. First Union also admitted that if Berry prepaid the Note, First Union would no longer have a right to the commissions.

Third, First Union admitted that it would have to account for any surplus paid in excess of the debt.

Fourth, First Union admitted that the assignment did not reduce the Note, as would an absolute assignment for sale.

Fifth, the relevant agreements express the intent that the assignment was to secure the otherwise unsecured loan or Note. The Note uses the words "loan", "collateral" and "security". The Note states that Berry is granting a security interest. First Union's representative testified that there was no available space on the Note in which to place an absolute assignment. Ambiguities or conflicts, if any, in the Note must be construed against First Union, the drafter of the Note. *Mid–Continent Refrigerator Co. v. Way*, 263 S.C. 101, 208 S.E.2d 31 (1974).

The fact that the second agreement does not have the language of the earlier agreement regarding security does not make the transaction any less subject to Article 9. The numerous references to the word "security" remain in the Note, and "[r]egardless of the terms of a written agreement a court sitting in equity may look to the practices, objectives, relationship, and the intention of the parties in determining the true meaning of a document." *In re Carolina Utilities Supply Co., Inc., supra*, 118 B.R. at 415. "[T]he cases are numerous where a Court has held that a deed absolute on its face was intended as a mortgage. . . . Where a conveyance is made as security for a debt it is a mortgage regardless of the label placed upon it by the parties." *In re Carolina Utilities Supply Co., Inc.,* supra at 412.

The assignment was made for, or in conjunction with, a loan, not a sale; and without the assignment, the Note is just a general, unsecured obligation. First Union's argument that it did not intend to effectuate a secured transaction (when, in fact, the assignment is a loan transaction with security, absolute conveyance or not) is insufficient to preclude the embrace of Article 9. See *In re Carolina Utilities Supply, Inc.,* 118 B.R. at 415. The "relationship between the parties is one of debtor and secured party (loan) and not that of grantor and grantee (sale) as to the specific accounts." *Id* at 417.

The fact that the assignment provided for the commissions to be paid directly to First Union by Colonial Life does not make the assignment any less a security instrument. See *In re Flowers,* 78 B.R. 774 (Bankr.D.S.C. 1986) in which a farmer had assigned to a third party creditor the proceeds (or accounts) from his sale of milk to a dairy. The proceeds went directly from the dairy to the third party creditor. The court concluded that "[a]s the assignment in question is governed by Chapter 9 of Title 36 of the South Carolina Code, a financing statement should have been filed in order to perfect the third party's security interest in milk and milk proceeds." *Id.* at 776.

In *Bank of Cave Spring v. Gold Kist, Inc.,* 173 Ga.App. 679, 327 S.E.2d 800 (1985), a judgment creditor initiated a garnishment proceeding against its debtor, a dairy farmer. A dairy answered the proceeding by claiming a prior assignment, of the milk accounts/proceeds paid by the dairy to the debtor, to the Bank of Cave Spring. Just as in the proceeding at bar, the debtor made an assignment in order to obtain a loan from the Bank of Cave Spring and, in making the assignment, the debtor agreed that the payor would send the milk proceeds/accounts directly to that bank.

In *Bank of Cave Spring* the court, in ruling in favor of the judgment creditor, discussed common law assignments, and how such assignments divest the assignor of the property, and how the Uniform Commercial Code includes assignments used for security.

*Id.* 327 S.E.2d at 805. That court, noting that the assignment document used words that absolutely divested the debtor of property rights, and noting that the payments were made directly by the dairy to the bank, concluded that the underlying purpose of the assignment was to assure, or secure, payment of the loan, *ergo,* the assignment was subject to Article 9 and the bank's failure to file a UCC financing statement rendered the assignment unperfected and subordinate to a judgment creditor. *Id.* 327 S.E.2d at 805. Such an arrangement, wherein the assigned funds are paid directly by a third party, is not an uncommon commercial transaction and does not take the transaction outside the coverage of Article 9.

Finally, First Union cites *Mid–Atlantic Supply v. Three Rivers Aluminum Co.,* 790 F.2d 1121 (4th Cir.1986) for its discussion of *Lyon v. Ty–Wood Corp.,* 212 Pa.Super. 69, 239 A.2d 819 (1968). *Lyon* is also cited in the Official Comments to S.C.Code Ann. § 36–9–104 as a case example of § 36–9–104(f)'s excluding from Article 9 coverage, an assignment of an account to pay an antecedent debt. In *Lyon,* the court found that there was no security interest because the intent was an assignment to pay a pre-existing debt. *Lyon,* 239 A.2d at 822. As indicated previously in this order, the exclusion of an assignment of an account to pay an antecedent debt is not applicable to Berry's assignment. Further, the decision in *Mid–Atlantic Supply* is based on the fact that the transaction (one party holding a jointly payable check for the benefit of another) was a trust, thus not a secured transaction; the check was not property of the estate, as trust property, pursuant to § 541(d). *Mid–Atlantic Supply,* 790 F.2d at 1128.

It is logical to infer that the reason for First Union's failure to file a UCC financing statement is not that First Union believed it was taking an absolute conveyance, but because First Union believed that it was taking an assignment of wages. First Union has argued that "commissions, wages or salary are property rights which may be assigned, and when such is made and the employer has notice of it, all parties will be bound by the assignment." Without citing any case authority for that position, First Union was relying on § 36–9–104(d) which excludes from Article 9 "an assignment of wages, salary or other compensation of an employee." [10] In its legal brief and up to the point of trial, First Union posited that the exclusion applied to Berry's assignment. It appears that, after reviewing the agreements between Colonial Life and Berry, and the expected admission of Colonial Life (that Berry is an independent contractor insurance agent), First Union has conceded that Berry was not an employee, but an independent contractor; and that the § 36–9–104(d) exception does not apply to the assignment.[11] Apparently First Union was under the misconception that it was taking a wage assignment from Berry as an employee of Colonial Life and was protected by the wage assignment exclusion set forth in § 36–9–104(d).

An assignment of accounts made contemporaneously with a loan to assure repayment is a secured transaction subject to Article 9. *In re Flowers,* 78 B.R. at 776; See *In re Carolina Utilities Supply Co., Inc.,* 118 B.R. at 417; *In re Rankin,* 102 B.R. at 442, 443 (renewal commissions); *Bank of Cave Spring,* 327 S.E.2d at 809.

All of this leads to the conclusion that Berry's assignment of the renewal commissions to First Union was intended to, and did, create for First Union a security interest in the commissions.

**10.** The § 36–9–104(d) exclusion was put into the Uniform Commercial Code because the drafters of the Code believed that wage assignments should be regulated by the individual states. Section 39–9–104(d), Official Comments, No. 4. The exclusion was not enacted on the basis that such assignments are absolute and divest an assignor of all rights to property.

**11.** Case law states that the § 36–9–104(d) exclusion does not apply to an individual who is an independent contractor. *Massachusetts Mut. L. Ins. Co. v. Central Penn Nat. Bank,* 372 F.Supp. 1027 (1974); *In re Rankin,* 102 B.R. at 443. Further, *Massachusetts Mut. L. Ins. Co.* and *In re Rankin* held that the compensation assignments of the independent contractors, in both cases an insurance agent, were subject to Article 9 and the respective banks, standing in the same shoes as First Union, were unperfected because it did not file a UCC Financing Statement. *Id.* at 1042.

## III

### *May the Trustee Avoid the Assignment of the Commissions?*

Since the assignment of the renewal commissions created a security interest for First Union which is subject to Article 9 and since no relevant UCC financing statement has been filed, the assignment is unperfected. Therefore, the Trustee may avoid the assignment pursuant to § 544, and treat First Union's claim as unsecured. See *In re Flowers,* 78 B.R. 774 (Bankr.D.S.C., 1986); *In re York Chemical Industries, Inc.,* 30 B.R. 583 (Bankr.D.S.C.1983).

### *ORDER*

IT IS ORDERED THAT: (1) the unrecorded assignment of Berry's renewal commissions to First Union is hereby avoided pursuant to § 544; and (2) First Union's claim against the debtor estate is that of a general unsecured creditor.