93 F.3d 47
 Ralph CIFARELLI, Plaintiff-Appellant,
v.
VILLAGE OF BABYLON; Donald E. Conroy; Diane Gilmore;
Ralph Scardino; Kevin Muldowney; Ramon Accettella, all
individually and as Members of the Board of Trustees of the
Village of Babylon; Suffolk County, Suffolk County Dept. of
Civil Service, Defendants-Appellees.
 No. 1394, Docket 95-9103.
 United States Court of Appeals,
Second Circuit.
 Argued May 9, 1996.
Decided Aug. 16, 1996.
 
 Perry S. Reich, Schapiro & Reich, Lindenhurst, NY, for plaintiff-appellant.
 Gerard J. Glass, Glass & Glass, Babylon, NY (Maureen A. Glass, on the brief), for defendants-appellees.
 Before: CARDAMONE, ALTIMARI, and PARKER, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant Ralph Cifarelli ("Cifarelli") appeals from a judgment of the United States District Court for the Eastern District of New York (Wexler, J.), (1) awarding him nominal damages and granting the remainder of defendants-appellees' motion for summary judgment on his due process and equal protection claims, and (2) denying his motion to amend the judgment. On appeal Cifarelli contends that the district court erred in granting summary judgment because genuine issues of material fact exist concerning the defendants' alleged good faith in eliminating his job. We find that the record supports the district court's conclusion that genuine issues of material fact do not exist, and accordingly affirm.
 
 BACKGROUND
 
 2
 Cifarelli was employed by the Village of Babylon ("Village") in the full-time civil service position of Chief Building Inspector from March of 1989 until August 10, 1993, when the Village's Board of Trustees ("Board") unanimously resolved to eliminate the full-time position Cifarelli held. At the time he was terminated, Cifarelli's annual salary was $30,100. Concurrent with its elimination of the full-time position, the Board resolved to create a part-time, non-civil service position of building inspector, and to appoint Steven Fellman ("Fellman") to that position at an annual salary of $5,000. The Suffolk County Department of Civil Service ("DCS") approved the Board's resolutions. Cifarelli was informed of his termination several hours prior to the Board's vote. Ten days after his termination, Cifarelli commenced this action under 42 U.S.C. § 1983 (1994).
 
 
 3
 Meanwhile, DCS notified the Village that it had mistakenly advised the Village that it need not offer Cifarelli the part-time position it was creating. Consequently, the Village retracted the offer made to Fellman, placed Cifarelli's name on a one-name preferred list for the part-time position, and in a letter to Cifarelli dated September 30, 1993, offered him the position. DCS, however, found the Village's initial letter inadequate, prompting the Village to send a supplemental letter to Cifarelli dated October 25, 1993, which informed him, among other things, that he had ten business days in which to respond to the Village's offer of employment. Because Cifarelli failed to respond to the offer within the ten-day period, the Village advised him in a letter dated November 9, 1993, that it considered him to have declined the part-time position.
 
 
 4
 Two days later Cifarelli's counsel sent a letter to the DCS objecting to the ten-day deadline as unduly harsh. In a letter to the Village dated November 16, 1993, Cifarelli then purported to accept the part-time position. The Village advised Cifarelli that it would defer to DCS regarding whether or not Cifarelli's acceptance could be deemed timely. Shortly thereafter, DCS notified Cifarelli that ten-days was a sufficient amount of time within which to accept the part-time position, and that his acceptance was untimely.
 
 
 5
 In his complaint, Cifarelli named as defendants the Village, the Board and its individual members, and DCS, which was subsequently dismissed as a defendant by stipulation of the parties. The complaint alleged that: (1) the defendants deprived Cifarelli of a property interest in a tenured position without notice of the cause for his termination or an opportunity to be heard, in violation of his due process rights under the United States and New York Constitutions, and (2) that such termination without notice and hearing was arbitrary, unreasonable, and capricious, in violation of his equal protection rights under the federal and state constitutions.
 
 
 6
 The defendants moved for summary judgment, claiming that Cifarelli did not have a constitutionally protected property interest in the full-time position, because that position was eliminated in accordance with New York Civil Service Law § 80 (McKinney 1983 & Supp.1996). Section 80 provides, in relevant part, that competitive, civil service positions may be abolished for reasons of "economy, consolidation, or abolition of functions." Moreover, the defendants contended that they legitimately gave the part-time position to Fellman, only after Cifarelli failed to timely respond to the offer extending him the new position. Finally, the defendants claimed that the individual Board members were protected by qualified immunity. In opposing the motion, Cifarelli asserted that the Board eliminated his position specifically to get rid of him, and that its rationale of economy and efficiency was pretextual. According to Cifarelli, the pretextual nature of the Board's rationale and the inadequacy of the ten-day acceptance period were questions of material fact to be decided by a jury.
 
 
 7
 The district court denied the defendants' motion in part, and granted it in part. Relying on our opinion in Dwyer v. Regan, 777 F.2d 825 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986), the court held that the defendants violated Cifarelli's procedural due process rights because they did not afford him adequate time to object to his termination and to request a pretermination hearing. See id., 777 F.2d at 833 (where state terminates single employee, due process requires pretermination hearing upon timely request of employee objecting to termination on grounds of pretext). Nonetheless, the district court held that Cifarelli was only entitled to nominal damages, because Cifarelli clearly would not have prevailed in a pretermination hearing. See id. at 834 ("If [defendant] can show that [plaintiff's] employment would have been terminated even after a proper pretermination hearing, [plaintiff] will nonetheless be entitled to recover nominal damages.") (citing Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978)).
 
 
 8
 The district court determined that Cifarelli would not have prevailed in a hearing because the defendants had demonstrated a good faith basis for eliminating his position, namely, for economic reasons, and Cifarelli could not demonstrate that the defendants' actions were motivated by bad faith. Consequently, the court held that Cifarelli had not met his burden of establishing a disputed issue of material fact sufficient to defeat summary judgment; except for allowing nominal damages, the district court granted the defendants' motion as to the due process claims. It further held that Cifarelli's loss of the part-time position did not violate his due process rights, because that position was properly offered to, and declined by, him. Finally, the district court held that there were no grounds in the record to support an equal protection claim under the federal or state constitutions.
 
 
 9
 After judgment was entered, Cifarelli moved pursuant to Fed.R.Civ.P. 52(b) and 59(e) for an order amending the judgment. Cifarelli contended that the district court erred in relying on an affidavit from Donald E. Conroy ("Conroy"), the Village Mayor, which stated that the Village's decision to eliminate Cifarelli's position was motivated by economic considerations, because Cifarelli did not have an opportunity to address the contents of the Conroy affidavit in a sur-reply. The district court denied the motion, on the ground that Cifarelli's response papers to the defendants' motion made clear that he was fully aware of the defense's argument prior to receiving the reply.
 
 
 10
 Cifarelli then brought the present appeal.Discussion
 
 
 11
 On appeal, Cifarelli claims that the district court erred in granting summary judgment, because it: (1) decided a contested issue of material fact; namely, whether the defendants eliminated his position in good faith, and (2) considered the contents of the Conroy affidavit in support of the defendants' motion.
 
 
 12
 We review a district court's grant of summary judgment de novo. Giano v. Senkowski, 54 F.3d 1050, 1052 (2d Cir.1995). Summary judgment is warranted "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1352 (2d Cir.1994) (internal quotations and citations omitted), and the movant is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). The court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. See Institute for Shipboard Educ. v. Cigna Worldwide Ins. Co., 22 F.3d 414, 418 (2d Cir.1994).
 
 
 13
 Once a movant has demonstrated that no material facts are in dispute, the non-movant must set forth specific facts indicating a genuine issue for trial exists in order to avoid the granting of summary judgment. See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990). However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. Id. Finally, Fed.R.Civ.P. 56(c) and (e) provide that a non-moving party may not rest on the pleadings but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); United States v. Rem, 38 F.3d 634, 643 (2d Cir.1994).
 
 1. The Defendants' Good-Faith
 
 14
 Relying on principles of employment discrimination law, Cifarelli argues that the district court improperly granted summary judgment because he: (1) established a prima facie case of discriminatory termination, and (2) had shown that the defendants' rationale for terminating him on the grounds of economy and efficiency was pretextual. According to Cifarelli, the defendants' rationale is belied by such facts as: (i) the proposed Village budget for the 1994-95 fiscal year allegedly showed no overall savings from the elimination of his position; (ii) the Village created three additional jobs which entailed certain code-enforcing functions formerly performed by Cifarelli; and (iii) Mayor Conroy's deposition testimony explained that his motivation for eliminating Cifarelli's position was, in part, his desire to "revamp" the building operations department, to improve standards, and to "proceed in another direction."
 
 
 15
 Cifarelli's reliance on employment discrimination cases is misplaced. Cifarelli has not alleged that his termination was the result of discrimination, and we read no such allegations in Cifarelli's papers. Nor has he appealed that portion of the district court's judgment implicating such claims--namely, the court's dismissal of his equal protection claims. As a result, the principles underlying employment discrimination law are inapposite. Rather, New York Civil Service law is dispositive of Cifarelli's claims.
 
 
 16
 Under New York law, "a public employer may abolish civil service positions for purposes of economy or efficiency" so long as the abolition is not "a subterfuge to avoid the statutory protection afforded to civil servants before they are discharged." Bianco v. Pitts, 200 A.D.2d 741, 607 N.Y.S.2d 78, 79 (2d Dep't 1994) (citations omitted); Switzer v. Sanitary Dist. No. 7, 59 A.D.2d 889, 399 N.Y.S.2d 43, 44-45 (2d Dep't 1977). The burden is on the party challenging the abolition to prove "that the act was not effected in good faith." Bianco, 607 N.Y.S.2d at 79 (citations omitted).
 
 
 17
 Cifarelli cites the defendants' appointment of Fellman to the part-time position as evidence that the abolition of his position was undertaken in bad faith. Fellman's appointment alone, however, is insufficient to establish a genuine issue of material fact regarding the defendants' alleged bad faith. New York law makes plain that bad faith requires a dishonest purpose. See, e.g., id. 607 N.Y.S.2d at 79 (abolition of a civil service position cannot be motivated by a desire to circumvent the requirements of the Civil Service Law); cf. Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 461 N.Y.S.2d 746, 750 n. 5, 448 N.E.2d 413, 417 n. 5 (1983) ("Bad faith, the mirror image of good faith, connotes a dishonest purpose."); Gordon v. Nationwide Mut. Ins. Co., 30 N.Y.2d 427, 334 N.Y.S.2d 601, 608, 285 N.E.2d 849, 854 (1972) (In breach of contract context, "bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract."), cert. denied, 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973).
 
 
 18
 Here, the record amply demonstrates the lack of any such dishonesty on the part of the Village to avoid the requirements of the Civil Service Law. The Village originally offered the part-time position to Fellman only after DCS advised it that the position could be offered to someone other than Cifarelli. When DCS subsequently retracted that advice, and instructed the Village that it must offer the part-time position to Cifarelli, the Village swiftly complied. The Village acted equally swiftly when DCS instructed it that a more detailed offer had to be mailed to Cifarelli. Moreover, when Cifarelli purported to accept the part-time position after the deadline for acceptance had expired, the Village did not reject his acceptance outright, but further agreed to abide by the decision of DCS.
 
 
 19
 Moreover, Cifarelli's arguments suggesting pretext, separately or in combination, fail to establish a genuine issue of material fact on the question of bad faith. First, it is self-evident that an overall increase in the 1994-95 Village budget over the previous year does not speak to the Village's cost-savings as a result of reallocating its resources by eliminating the full-time position. See O'Donnell v. Kirby, 112 A.D.2d 936, 492 N.Y.S.2d 454, 456 (2d Dep't 1985) (where county's annual budget reflected an increase in salaries over previous years, "this fact, standing alone, hardly warrants a finding that the Legislature did not act in good faith in abolishing petitioner's position .... nor will we sit in judgment on the wisdom or relative efficiency of this legislative act"). Indeed, we note that the record indicates a net savings to the Village with respect to the positions at issue. While $55,000 was allocated in 1993-94 for the Building Department, which included Cifarelli's salary for the full-time position, only $31,000 was allocated to the Building Department in 1994-95. If the $5,000 for the new part-time position under Code Enforcement is taken into account, an overall savings of $19,000 to the Village is realized.
 
 
 20
 Second, Mayor Conroy's testimony that part of his motivation for eliminating Cifarelli's position was a desire to "revamp" the building operations department, to improve standards, and to "proceed in another direction," fully supports the Village's contention that the elimination of Cifarelli's position was undertaken for efficiency purposes; such a motivation hardly evinces dishonesty or pretext. Third, the creation of three code-enforcement positions in the 1994-95 budget which entail functions previously performed by Cifarelli reflect a reorganization and reallocation of resources. We will not second guess the Village's judgment that these new positions provided greater economy and efficiency. See O'Donnell, 492 N.Y.S.2d at 456.
 
 
 21
 Accordingly, we hold that the district court did not err in granting summary judgment on the ground that a genuine issue of material fact concerning the defendants' alleged bad faith did not exist. See Nauta v. City of Poughkeepsie, 610 F.Supp. 980, 982 (S.D.N.Y.1985) (granting summary judgment in a case challenging job elimination under Civ. Serv. Law § 80, because "the evidence of budgetary motive is so compelling that no reasonable interpretation of the evidence supports the existence of a genuine issue of material fact") (internal quotations omitted); cf. Seeman v. Trustees of Columbia Univ., 633 N.Y.S.2d 954 (1st Dep't 1995) (Where allegations of bad faith "have no support in the record [they] fail to raise any issue of fact requiring a trial.").
 
 2. Conroy Affidavit
 
 22
 Cifarelli also argues that Mayor Conroy's affidavit was the first submission by the defendants to suggest that Cifarelli's position was eliminated for fiscal reasons. According to Cifarelli, the district court erred in relying on the contents of the affidavit as a basis for the defendants' good faith motivations, because the affidavit was submitted as part of the defendants' reply to which Cifarelli was not allowed a sur-reply. The district court rejected this claim, on the ground that Cifarelli's response papers to the defendants' motion indicated that he was fully aware of the Village's defense. We agree with the district court that the record belies Cifarelli's claim.
 
 
 23
 As the district court noted, Cifarelli's memorandum in opposition to the defendants' motion for summary judgment, which was submitted before the defendants' reply, stated that "the factual issue in this case is whether the reason defendant employer gave for terminating the plaintiff, purportedly economy, was real or pretextual." Further, the eighth affirmative defense in the defendants' answer expressly justified the elimination of the position in terms Civ. Serv. Law § 80, which permits the abolition of civil service positions for reasons of economy. In addition, paragraph 5 of Cifarelli's affirmation in opposition to the defendants' 3(g) statement raises the issue of pretext; it states that the defendants' 3(g) statement "omits reference to the budgets," that "[t]he budgets at issue do not show any overall savings in the building department," and that "at least three other employees were hired in the building department" to perform code enforcement work previously done by Cifarelli. Finally, the deposition transcript of Mayor Conroy reflects that Cifarelli's counsel questioned him repeatedly about issues of economy.
 
 
 24
 In sum, the record reveals that Cifarelli was fully aware prior to the defendants' reply of their defense of economy and efficiency. However, Cifarelli chose not to address that defense as forcefully as he could have in his response papers. Accordingly, the district court did not abuse its discretion in denying Cifarelli's motion to amend the judgment. See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir.1983) (per curiam). Cf. Ball v. Interoceanica Corp., 71 F.3d 73, 76 (2d Cir.1995) (per curiam) (motion for a new trial pursuant to Fed.R.Civ.P. 59(a) should not be granted " 'merely because the losing party can probably present a better case on another trial.' ") (quoting 6A James Wm. Moore et al., Moore's Federal Practice p 59.08, at 59-96 through 97 (2d ed.1989)).
 
 CONCLUSION
 
 25
 For the reasons stated above, the judgment of the district court is affirmed.
 
 CARDAMONE, Circuit Judge, dissenting:
 
 26
 I cannot agree that summary judgment was appropriate in this case and, accordingly, respectfully dissent. This appeal presents a narrow question: whether summary judgment was properly granted on the issue of damages where the plaintiff had already established a violation of his Fourteenth Amendment procedural rights. Defendants have not appealed the district court's ruling that Cifarelli was entitled to be notified in advance of his dismissal and to be provided a pre-termination hearing if he so requested. As a result, Cifarelli is entitled at the very least to an award of nominal damages for this constitutional violation, as were the plaintiffs in Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978).
 
 
 27
 Although the district court awarded nominal damages, it ruled that Cifarelli's discharge was "justified" as a matter of law because defendants demonstrated that his position was abolished "in good faith" for economic reasons. The trial court found the motive and its validity under New York law relevant in calculating damages because the Village of Babylon (Village)--if it had been acting in good faith and for economic reasons--would have terminated Cifarelli even if a proper hearing had been held. To that extent, the district court's reasoning was consistent with the rules governing damages awards under § 1983. See Zinermon v. Burch, 494 U.S. 113, 134 n. 19, 110 S.Ct. 975, 987-88 n. 19, 108 L.Ed.2d 100 (1990); Carey, 435 U.S. at 266-67, 98 S.Ct. at 1053-54; Dwyer v. Regan, 777 F.2d 825, 834 (2d Cir.1985), modified, 793 F.2d 457 (1986); cf. Hogue v. Clinton, 791 F.2d 1318, 1326-29 (8th Cir.) (Lay, C.J., dissenting in part) (arguing that measure of damages should depend upon whether a property or liberty interest was implicated), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986).
 
 
 28
 But these principles do not support the view that New York law is dispositive of plaintiff's claims. State law, as just noted, is relevant to resolving the factual question of whether plaintiff suffered a compensable injury, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), but the measure of damages is defined in the first instance by federal law, see Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 238-40, 90 S.Ct. 400, 405-06, 24 L.Ed.2d 386 (1969). Moreover, the standard for evaluating a motion for summary judgment--whether or not federal law governs the substance of a claim--is undoubtedly defined by federal law. See Fed.R.Civ.P. 56; cf. Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1143-44, 14 L.Ed.2d 8 (1965) (where applicable federal rule is in effect, that rule governs unless it conflicts with federal statutory or constitutional law).
 
 
 29
 Cifarelli urges that we evaluate his claim in light of our precedents involving summary judgment motions in employment discrimination cases. The burden-shifting analysis used in such cases to determine if the employer's motive was a discriminatory one, see, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 513-18, 113 S.Ct. 2742, 2750-53, 125 L.Ed.2d 407 (1993), concededly has no direct application to a procedural due process claim. But, because the employer's motive is relevant in the present case, the same reasons that make us reluctant to grant summary judgment in discrimination cases should make us hesitant to do so here. Cifarelli is a former employee who was terminated without constitutionally-guaranteed process and his former employer asserts that the decision was motivated by good-faith fiscal reasons. Both types of cases require an analysis of the permissible inferences regarding the employer's motive in terminating an employee.
 
 
 30
 We have often stated that "summary judgment is ordinarily inappropriate where intent and state of mind are at issue." Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir.1989); see also Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir.1994); Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir.1991). This notion is not limited to Title VII cases, see, e.g., Gallo, 22 F.3d at 1224 (applying the rule to the Age Discrimination in Employment Act), nor is its logic limited to statutory discrimination claims.
 
 
 31
 The damages question in the present case requires an analysis of the employer's intent and state of mind. Further, that question must be evaluated in light of the reality that an employer is rarely so careless as to note in its personnel file that its actions were motivated by factors forbidden by law. See, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994). Inferences about an employer's motive therefore must ordinarily be drawn from circumstantial evidence and summary judgment is inappropriate where there is enough evidence to permit an inference in plaintiff's favor. In evaluating the evidence, a trial court is limited to identifying disputed questions of fact; it may not assume the role of factfinder and undertake to decide such issues. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987). For these reasons, Cifarelli's reliance on the discrimination cases is most apt.
 
 
 32
 In light of our usual reluctance to deny an aggrieved employee the opportunity to present evidence of motive to the factfinder, I would reverse so that plaintiff might have his day in court. In my view, the question of whether the Village acted in good faith was a disputed material issue of fact, one properly submitted to a jury. Cifarelli's termination occurred under suspect circumstances. He was not told that he was about to lose his job until a few hours before the Village formally eliminated his position. There is record evidence--for example, an internal memorandum dated July 27, 1993--indicating the Village was seeking advice from the county Civil Service Department (Department) about its obligations upon terminating Cifarelli long before he was formally fired. Given that the Board of Trustees decided in the course of a single meeting both to eliminate plaintiff's job and to hire Stephen Fellman to perform some of his former duties, a jury could infer that the plan to terminate Cifarelli was conceived well in advance. Yet the mayor notified plaintiff only a few hours before the vote. This strategy, undertaken by officials of a small municipality, suggests defendants wanted to get rid of plaintiff and acted in bad faith in doing so.
 
 
 33
 In addition, the available direct evidence of motive does not support the grant of summary judgment. Far from stating unequivocally that the termination was driven by fiscal considerations, the mayor at his deposition first offered the following explanation of the concerns that animated the decision: "We were trying to improve our standards in our offices. Times were changing. We had to address issues that were important in the Village and in the Department. And we were examining them. And as such, and in reflection, we reviewed again what was happening with the building permits. They were continuing to go down in numbers." And, although he indicated that economics played a role, the mayor later stated that Cifarelli was not initially offered the new part-time job--which concededly replaced Cifarelli's position in part--because he thought it was time to "take the office and revamp it" and "to proceed in another direction." Such statements would allow a factfinder to find that the purported fiscal motive was not the real reason plaintiff was fired.
 
 
 34
 Nor do the Village's budget figures support a grant of summary judgment. These documents suggest that the appropriation for "personal services," which according to defendants included plaintiff's salary, was cut by $24,000 in the budget for fiscal year 1993-94. Plaintiff maintains in an affidavit, however, that this purported savings is illusory because (1) Fellman, his parttime replacement, is now drawing some $5,000 annually, (2) Fellman had already been hired in 1992 to assume some of plaintiff's other duties at a rate of $10,000 annually (a fact confirmed by the Village's budget documents), and (3) additional personnel were also hired to perform his former duties, at a cost of some $15,000. Drawing all reasonable inferences in favor of Cifarelli, the non-movant, the budgetary information scarcely supports the proposition that the Village's true motive was to save money.
 
 
 35
 The Village's decision to hire substitute personnel to perform Cifarelli's duties could support a finding that the Village acted in bad faith. The district court thought the Village's immediate compliance with the Department's direction to offer plaintiff the new part-time position showed it acted in good faith. But the Village's action was not part of a good faith effort to give Cifarelli the job--the Village had already offered the position to Fellman. Instead, the Village finally offered the position to plaintiff because of the Department's advice that it was required by law to do so. Such behavior hardly evinces a good faith motive. Cf. Switzer v. Sanitary Dist. No. 7, 59 A.D.2d 889, 890, 399 N.Y.S.2d 43 (2d Dep't 1977) (employer's "good faith" was disputed issue where position might have been eliminated "to discharge this petitioner from his position and permit the substitution of a newly hired employee to perform substantially the same, or similar, services").
 
 
 36
 Other facts upon which the trial court relied also do not evidence good faith. It cited the Village's swift compliance with the Department's order to extend to Cifarelli a second and more detailed offer after the Village had finally extended the initial offer on September 30, 1993. An action taken to comply with the law is not evidence of good faith. The district court also relied on the Village's decision to tailor Cifarelli's part-time job offer to the terms imposed by the Department, and to let the Department decide whether his acceptance was too late to be valid. The majority today adheres to this reasoning. It does not strike me that the Village's conformance with the various strictures imposed by the Department shows it acted in good faith, much less that conformance compels such a conclusion as a matter of law.
 
 
 37
 Moreover, I would reject defendants' contention that plaintiff may not recover because he never alleged a bad faith reason for his termination. To prove damages in this sort of case, plaintiff need only show a lack of good faith. If this fact is established, a jury could conclude that the constitutional deprivation caused plaintiff actual harm because his termination would not have occurred were it not for the denial of a hearing. I recognize that if the case at hand involved a statutory claim of discrimination, plaintiff would need to demonstrate that the employer based its decision on a particular impermissible factor. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir.1995). But in this case plaintiff was only required to show a lack of good faith. Evidence establishing a specific non-economic motive was not required.
 
 
 38
 Finally, the termination decision from this record appears to have been essentially personal and political, one made behind closed doors when due process required that notice and a hearing be provided. Cifarelli may or may not have suffered a compensable injury from the conceded constitutional deprivation, but in any event that was a question properly "resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
 
 
 39
 In sum, the various affidavits, deposition testimony, and other documents presented were in my view sufficient to raise a triable issue of fact. Cifarelli should have been allowed to present to a jury the evidence tending to show the Village did not act in good faith. Several factors weigh in favor of trying the damages question: the timing and circumstances of the termination, including the extremely short notice and the Village's attempt surreptitiously to hire another person or persons to perform Cifarelli's former duties; the ambiguity in the available budget information; and the defendants' vague explanations of the reasons for eliminating the full-time building inspector position.
 
 
 40
 I vote to reverse the grant of summary judgment and to remand the case for trial.