In re The BENNETT FUNDING
GROUP, INC., Debtors.

William J. Alexander, Plaintiff,

v.

Richard C. Breeden, Trustee The
Bennett Funding Group,
Inc., Defendant.

Bankruptcy No. 96–61376.
Adversary No. 96–70125A.

United States Bankruptcy Court,
N.D. New York.

April 16, 1999.

Nicolette & Perkins, Oradell, NJ, Jeanette A. Odynski of counsel, for plaintiff.

Simpson Thacher & Bartlett, New York City, Maurice H. Hartigan III, of counsel, for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion filed by Richard C. Breeden, as trustee

1. The Debtors are eight related entities which filed for bankruptcy under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") between March 29, 1996, and July 25, 1997, when the estates were consolidated pursuant to an Order of this Court. The entities within the Consolidated Estate include The Bennett Funding Group, Inc. ("BFG"), Bennett Receivables Corporation; Bennett Receivables Corpora-

("Trustee") of the consolidated estates of The Bennett Funding Group, Inc. (collectively, the "Debtors")[1], requesting summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), which incorporates by reference Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), in the adversary proceeding commenced on May 15, 1996, by William J. Alexander ("Plaintiff").

Previously, on July 24, 1996, the Trustee filed a motion pursuant to Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6) seeking dismissal of Plaintiff's complaint for failure to state a claim upon which relief may be granted. The Court, in an Order signed December 5, 1996, denied the Trustee's motion and also allowed the Plaintiff to amend his complaint.

On January 6, 1997, the Plaintiff filed his "First Amended Complaint in Reclamation" ("Amended Complaint"). Plaintiff indicates that he is seeking "to reclaim his money and property from the Trustee on the basis that it is not property of the estate". See Amended Complaint at ¶ 4. For his first cause of action, it is Plaintiff's position that he purchased what he describes as "Accounts" from BFG through the services of a broker.[2] Plaintiff contends that thereafter BFG "merely acted as Plaintiff's collection agent." See id. at ¶¶ 9 and 10. It is Plaintiff's position that he is the true owner and is entitled to all payments received in connection with the Accounts. See id. at ¶ 20.

Plaintiff's second cause of action alleges that he purchased all of BFG's right, title

tion II, Bennett Management & Development Corporation, The Processing Center, Inc., Resort Service Company, Inc.; American Marine International, Ltd. and Aloha Capital Corporation.

2. Plaintiff's original complaint described the property he allegedly purchased as leases or leasing contracts.

and interest in certain equipment owned by the Debtor and leased to various entities and that he is entitled to receive payments in connection with the leases of the equipment received by the Trustee postpetition. *See id.* at ¶ 31.

In his third cause of action, the Plaintiff alleges that the Debtors' estate has been unjustly enriched as a result of the "wrongful detention and diversion of Plaintiff's property." *See id.* at ¶ 33. Accordingly, the Plaintiff seeks an accounting of all the monies collected "in connection with the Accounts and equipment." *See id.* at ¶ 34.

Plaintiff's fourth cause of action appears to seek a declaration from the Court that the filing requirements of the New York Uniform Commercial Code ("NYUCC") should not be imposed on the Plaintiff as it "would be inequitable and contrary to the spirit and intent of the UCC," (*see id.* at ¶ 39), which, according to the Plaintiff "is to clarify business transactions and protect consumers like the Plaintiff. . . ." [3] *See id.* at ¶ 38.

On January 22, 1997, the Trustee filed his Answer generally denying the Plaintiff's allegations. Among other affirmative defenses, the Trustee asserts that Plaintiff's claims are barred because (i) Plaintiff does not own the equipment or leases; (ii) Plaintiff does not have a valid and perfected security interest in the equipment; (iii) Plaintiff does not have a valid security interest in the lease contracts, and (iv) Plaintiff does not have a valid and perfected security interest in the proceeds of the lease contracts. *See* Trustee's Answer at 8.

Oral argument on the Trustee's motion for summary judgment was heard on November 12, 1998, in Utica, New York, and adjourned to December 3, 1998, to allow the parties an opportunity to provide the Court with memoranda of law. The matter was submitted for decision on January 4, 1999.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(O).

## FACTS

Between August 1993 and February 1996, Plaintiff entered into 22 transactions with BFG. In connection with each of the transactions he received a Statement of Purchased Contracts and a payment or amortization schedule. In connection with eleven of the transactions he received a Bill of Sale of Contracts and in connection with the remaining eleven transactions he received an Assignment of Contract (collectively the "Transaction Documents"). Plaintiff received neither the original leases nor copies of the leases or contracts nor did he file a financing statement in connection with any of the transactions. For purposes of this motion, the Plaintiff has indicated that he intends to proceed with respect to only four of the twenty-two transactions. *See* Affidavit of Maurice Hartigan, Esq. ("Hartigan Affidavit"), sworn to October 7, 1998, at Exhibit A and Plaintiff's Affidavit, filed October 8, 1998.

According to the Statement of Purchased Contracts issued in connection with the four transactions at issue, the Plaintiff provides the following information:

| Lessee | Contract # | Investor Cost | Monthly Payment | Term | 1st Payment Date |
|--------|-----------|---------------|-----------------|------|------------------|
| Mutual of NY | 92061524 [4] | $27,417.99 | $ 859.18 | 36 mo. | Sept. 15, 1993 |

3. Plaintiff asserts that he is a consumer and is not involved in commercial lending.

4. According to the Debtors' records, this particular contract number is for a lease held by Scriptex Enterprises, Inc., not Mutual Life Insurance Co. of New York ("Mutual of NY"). Pursuant to a letter from Plaintiff's counsel, Jeanette A. Odynski, Esq., dated September 9, 1998, Plaintiff is asserting an interest in Ben-

| | | | | |
|---|---|---|---|---|
| Colgate Palmolive Co. | $15,204.65 | $ 488.51 | 36 mo. | Feb. 28, 1994 |
| Chevron Corp. | $ 8,872.12 | $ 278.02 | 36 mo. | May 15, 1994 |
| U.S. Dept. of Labor | $19,198.31 | $ 615.08 | 36 mo. | April 30, 1996 |

According to the Debtors' records, the Trustee was able to provide the following list of leases which happen to correspond to the lessee and the amount of the monthly payments identified in the Plaintiff's Statements of Purchased Contracts:

| Lessee | Contract # | Monthly Payment | Lease Term[5] | Bates Stamp No.[6] |
|---|---|---|---|---|
| Mutual of NY | 93042384 [7] | $ 859.18 | 4/28/93–4/27/96 | BFG000041–56 |
| Colgate Palmolive Co. | 92101430 | $ 488.51 | 12/4/92–12/3/95 | BFG000057–83 |
| Chevron Corp. | 91050289 | $ 278.02 | 7/4/91–7/3/94 | BFG000263–274 |
| Chevron Corp. | 91050588–99 | $ 278.02 | 6/4/91–6/3/94 | BFG000285–430 |
| U.S. Dept. of Labor | 95101712 | $ 615.08 | 1/28/96–1/27/99 | BFG000431–452 |

## ARGUMENTS

The Trustee asserts that there are only two operative facts that the Court need consider: (1) "The leases and equipment in which Plaintiff thought he had taken an interest do not exist; and (2) in the few instances in which the *Debtor* has real leases with terms that match terms of leases identified on the Plaintiff's Transaction Documents, those real leases are evidenced by chattel paper, and the Plaintiff never took any steps to perfect his interests in any chattel paper, whether the Plaintiff's transactions are characterized as sales or security arrangements." *See* Trustee's Reply to Plaintiff's Opposition to Trustee's Motion for Summary Judgment, filed November 12, 1998, at 4.

Plaintiff does not address the argument made by the Trustee that the leases and equipment do not exist, except to point out that if the Plaintiff has the wrong lease number for Mutual of NY, it is because it was fraudulently provided by BFG and/or BFG's agents.

nett Funding Lease No. 93042384. *See* Hartigan Affidavit at Exhibit A.

**5.** The documents actually indicate a beginning date for the lease, as well as a 36 month term in all cases. The Court has extrapolated this information in arriving at an estimated termination date for each lease.

With respect to perfection of his alleged interest in the collateral, Plaintiff argues that as an unsophisticated investor and someone not involved with commercial lending or financing, he is exempt from the requirements of Article 9 pursuant to NYUCC § 9–104(f). Plaintiff relies on those courts which have suggested that § 9–104(f) "excludes all non-financing sales of accounts or chattel paper and that the transactions enumerated therein are only examples...." *See* Plaintiff's Letter Brief, filed November 27, 1998 at 5.

If, however, the Court should conclude that it was necessary for the Plaintiff to perfect his interest in the collateral, then, relying on *McTevia v. Adamo (In re Atlantic Mortg. Corp.)*, 69 B.R. 321 (Bankr. E.D.Mich.1987), Plaintiff asserts that the Court should impose a constructive trust and allow him to perfect his security interest. As a basis for imposing a constructive trust, the Plaintiff argues that the "Debtor, and/or Debtor's agents, through their fraudulent conduct, improperly withheld

**6.** *See* Exhibit A of Affidavit of Heidi Sanders ("Sanders Affidavit"), sworn to on October 6, 1998, as well as attachments to letter of Plaintiff's counsel, dated February 16, 1999.

**7.** According to the Sanders Affidavit, the first two digits represent the year the lease was executed, the next two digits represent the month and the final four digits represent the "sequential identifier."

possession of the leases and prevented Plaintiff from perfecting." *See* Plaintiff's Letter Brief at 11.

### DISCUSSION

In making a determination whether to grant summary judgment, the Court must inquire whether a genuine issue of material fact exists, viewing the evidence presented in the form of the pleadings, interrogatories, admissions on file and affidavits submitted by the parties in the light most favorable to the nonmovant. *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir.1998). It is the burden of the nonmovant to show specific facts that are in dispute and present a genuine issue for trial. *See Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996) (citation omitted). "Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Id.* (citation omitted).

According to the Transaction Documents, the Plaintiff received an interest in four leases or contracts executed by BFG with Mutual of NY, Colgate Palmolive Company, Chevron Corporation and the U.S. Department of Labor. With respect to the leases with Colgate Palmolive Company and Chevron Corporation, assuming that Plaintiff had an interest in any of the leases which happened to match those in the Debtors' files with respect to the name of the lessee and the monthly payment amount, those leases ended by their terms prior to the commencement of the bankruptcy case and, therefore, the Court must conclude that at the time that BFG filed its petition, those leases/contracts no longer existed. Because Plaintiff acknowledges that he received all payments due him prior to April 1, 1996, and assuming he had an interest in any of those leases, he would not be entitled to receive any late payments on those leases that may have been received by BFG in connection with those two leases despite the fact that his agreement with BFG extends beyond the petition date in those two cases.

Although the lease with Mutual of NY and the lease with the U.S. Department of Labor ("Leases") found in the Debtors' files match with the name of the lessee and the amount of the monthly payment as they appear in the Transaction Documents, there is a dispute concerning whether the two Leases are actually the ones in which Plaintiff was allegedly given an interest. The Transaction Documents incorrectly identify the contract number of the lease with Mutual of NY in the Debtors' files and do not identify any contract number for the lease with the U.S. Department of Labor. There is also the fact that the lease payments do not extend out as far as the Transaction Documents provide. For example, the Plaintiff was to receive payments on the lease with Mutual of NY through August 15, 1996, but the documentation provided by the Trustee indicates that the lease found in the Debtors' files was to terminate on or about April 27, 1996. With respect to the lease with the U.S. Department of Labor, it appears from the Debtors' files that the lease term was revised down from 48 months to 36 months, (*see* BFG000434 and 436), and was to begin "no sooner than January 28, 1996" (*see* BFG000436). Plaintiff was to begin receiving payments April 30, 1996, over a period of 36 months. Therefore, if the lease term did run for only 36 months, the lease would have terminated before the payments to Plaintiff were scheduled to end.

Nevertheless, even if there is a question of fact regarding whether the Plaintiff has any interest in those particular Leases, that does not necessarily require that the Court deny the Trustee's motion. Rather, the Court must determine whether it is a dispute concerning a *material* fact because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In this case, even if the Plaintiff is able to establish that its transactions with BFG included a transfer of an interest in the Leases, there still remains a question of whether Plaintiff's rights are subordinate to those of the Trustee, entitling the Trustee to summary judgment. Plaintiff suggests that the Leases in which he asserts an interest are accounts. An "account" is defined as "any right to payment for goods ... leased which is not evidenced by an instrument or chattel paper...." NYUCC § 9–106. Chattel paper is generally defined as a writing or group of writings which evidence both a monetary obligation and a lease in specific goods. *See* NYUCC § 9–105(b). A review of the documents provided in connection with the two Leases convinces the Court that they are chattel paper and not accounts. They are both signed on behalf of the lessee, acknowledging the monthly obligation or lease payment, and both identify the specific goods being leased. For example, Lease # 95101712 is for the rental of a Sharp 3062 Copier, Serial Number 56223628 (*see* BFG 000431, 433, 437), and Lease # 93042384 is for the rental of a Toshiba 7110 Copier, Serial Number 0031121328 (later substituted for Serial Number 0031121326 and again for Serial Number EF310370) (*see* BFG 000041, 52 and 54).

■ As this Court has previously noted, Article 9 of the Uniform Commercial Code applies to the sale of chattel paper, as well as to any transfer intended to create a security interest in chattel paper. *See In re The Bennett Funding Group, Inc.*, 203 B.R. 30, 34 (Bankr.N.D.N.Y.1996). Therefore, the Plaintiff's contention that BFG sold the Leases to him does not relieve him from compliance with Article 9 if he is to protect his interest in them.

Plaintiff acknowledges that he did not file a financing statement pursuant to NYUCC § 9–304(1) to perfect his interest in the Leases. He also acknowledges that he does not have possession of the original Leases which would also allow him to perfect his interest in them pursuant to NYUCC § 9–305. Thus, assuming that Plaintiff is able to establish that he has an interest in the Leases and that his interest in the Leases attached pursuant to NYUCC § 9–203(1),[8] his interest would still be unperfected and subordinate to that of the Trustee as a hypothetical lien creditor pursuant to Code § 544(a).

■ Plaintiff makes the argument that as an unsophisticated investor his transactions with BFG are exempt from the perfection requirements of Article 9 of the Uniform Commercial Code. Specifically, Plaintiff contends that NYUCC § 9–104(f) excludes all transactions involving the sale of accounts or chattel paper which are unconnected to commercial financing.

NYUCC § 9–104(f) states that Article 9 does not apply

> to a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness.

The Official Comment to NYUCC § 9–104(f) notes that "Paragraph (f) excludes from the Article certain transfers of such intangibles which, by their nature, have nothing to do with commercial financing transactions." Plaintiff acknowledges that his transactions with BFG do not fit into any of the four scenarios listed in NYUCC

---

8. NYUCC § 9–203(2) provides that a security interest becomes enforceable against the debtor only after attachment occurs. Attachment requires that (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral; (b) value has been given; and (c) the debtor has rights in the collateral.

§ 9–104(f). Nonetheless, Plaintiff suggests that the transactions described in NYUCC § 9–104(f) are not exhaustive but merely illustrative. Indeed, Professor Grant Gilmore, the Reporter for the Article 9 project, supports Plaintiff's position. *See* 1 G. Gilmore, Security Interests in Personal Property, § 10–5 at 309 (1965); *see also In re Panama Airways, Inc.,* 4 UCC Rep.Serv. 424, 1967 WL 8961 (Bankr.S.D.Fla.1967). Plaintiff argues that the important consideration is whether the transaction involved commercial financing.

Interestingly enough, at the time Professor Gilmore's treatise was published, Code § 9–104(f) contained only three exceptions. In 1972 the Uniform Commercial Code was amended to add a fourth exception excluding the single account transfer made to satisfy a pre-existing debt from the requirements of Article 9.[9] There would have been no need to amend the section if, as Plaintiff suggests, the list was merely illustrative. The Official Comment to NYUCC § 9–102 clearly states that it is only *"[c]ertain* sales which have nothing to do with commercial financing transactions [that] are excluded by § 9–104(f)."* (emphasis added). There is no indication that *all* sales of accounts or chattel paper having nothing to do with commercial financing transactions are to be excluded. *See John Deere Co. v. Neal,* 544 S.W.2d 514, 516, 20 UCC Rep.Serv. 1332, 1334–35 (Tex.Civ.App.1976) (noting that "[t]he scope of Chapter 9 has been generally defined by § 9.102, and specifically limited by § 9.104. There is no apparent reason to give an expansive reading to the enumerated limitations."). Furthermore, the Court is not convinced that providing monies to a business in exchange for a return on that "investment" over time, particularly under the circumstances of this case, is not a commercial financing transaction.

The Court cannot view the Plaintiff's adversary proceeding in isolation. The Plaintiff is only one of thousands of individuals that invested in the Debtors' leasing business and allegedly received an interest in the leases of equipment. There are also hundreds of banks that provided funding to the Debtors in exchange for an interest in leases of equipment. Based on the Trustee's investigation, he alleges that the Debtors pledged the same leases to multiple investors and in some instances issued fictitious leases to serve as collateral. Plaintiff asserts that the Uniform Commercial Code is intended to clarify business transactions and to protect consumers. In order to do that, it provides a process by which notice is to be provided when an interest in certain kinds of collateral is transferred. Chattel paper is one such type of collateral. Without such notice, arguably the policy of the Uniform Commercial Code of "unitary treatment and commercial certainty" (*see* Amelia H. Boss, *Lease Chattel Paper: Unitary Treatment of a 'Special' Kind of Commercial Specialty,* 1983 Duke L.J. 69, 107, n. 189.) would be seriously frustrated. If the Court were to give credence to Plaintiff's argument, the banks would have to perfect their interest in leases transferred by the Debtors, but individual investors such as the Plaintiff would not. What about individual investors who utilized the services of a bank in placing their investments with the Debtors?

The assertion that Plaintiff was merely an unsophisticated investor and not a commercial lender does not persuade the Court that his transactions with BFG are of the type that should be excluded from the perfection requirements of Article 9. Clearly, they do not fit into any of the four categories enumerated in NYUCC § 9–104(f). Plaintiff is but one of thousands of individuals who invested funds in BFG's business in the hopes of earning a return on that investment. He contends he had purchased the Leases from BFG and that BFG was to act as his agent in collecting on the Leases. Yet, he failed to obtain

---

**9.** The 1972 amendments were adopted by     New York, effective July 2, 1978.

copies of the very Leases in which he now asserts an interest. He comes before this Court asking it to ignore the fact that in one case the lease number identified in the Transaction Documents does not correspond with the lease in which he is asserting an interest and in the other case, there is no lease number listed in the Transactions Documents provided to him by BFG. He asks the Court to assume that because the name of the lessee and the amount of the monthly payments match leases in BFG's files, that he has an interest in those two Leases. He also asks the Court to ignore the fact that the payment schedules he was given by BFG extend beyond the terms of the two Leases. He, presents no evidence to dispute the Trustee's assertion that, in fact, the leases do not exist— that BFG created fictitious leases using the names of actual lessees and monthly payment amounts found in actual leases. It is these very factors which emphasize to the Court the necessity of perfecting ones interest in chattel paper if there is to be commercial certainty. Under the circumstances, the Court must conclude that the Trustee is entitled to summary judgment as a matter of law given that the Plaintiff has failed to perfect his interest in the Leases and is not entitled to the payments derived therefrom.[10]

Plaintiff's argument that the Court should impose a constructive trust and somehow permit him to perfect his interest in the Leases must also fail. There has been no evidence or suggestion that BFG refused to provide the Plaintiff with the original Leases. The case cited by Plaintiff makes it clear that "[a] constructive trust is particularly appropriate to perfect the investor's security interest if the trust arises from the very actions which prevented the investor from perfecting his own position." *See Atlantic Mortgage Corp.*, 69 B.R. at 331. Plaintiff alleges that BFG, through its fraudulent conduct, withheld possession of the Leases from the Plaintiff. The fact that BFG's dealings with the Plaintiff may have been "laden with indicia of bad faith" is not sufficient to warrant the imposition of a constructive trust. *See Ryan v. Zinker (In re Sprint Mortgage Bankers Corp.)*, 177 B.R. 4, 8 (E.D.N.Y. 1995). As was the case in *Sprint Mortgage*, Plaintiff has not offered any proof, in affidavit form or otherwise, that he requested BFG to provide him with the Leases and that BFG refused to surrender them. He also has not alleged that he was in some way prevented by BFG from filing a financing statement to perfect his interest in the Leases. Therefore, the Court must conclude that Plaintiff's interest in the two Leases, if any exists, are subordinate to the Trustee's as a hypothetical lien creditor pursuant to Code § 544(a) and summary judgment in favor of the Trustee is appropriate.

Based on the foregoing, it is hereby

ORDERED that the Trustee's motion seeking summary judgment dismissing Plaintiff's complaint is granted.

---

**10.** Although Plaintiff has asserted an interest in the leased equipment, as well as the Leases, his second cause of action simply asserts that he is entitled to receive the payments received in connection with the leases of the equipment.