The **MEDIA GROUP, INC.,** Plaintiff,

v.

**HSN DIRECT INTERNATIONAL, LIMITED,** Defendant.

**No. 00 Civ. 7976 GEL.**

United States District Court, S.D. New York.

March 28, 2001.

Leonard Benowich, Roosevelt, Benowich & Lewis, LLP, White Plains, New York, for The Media Group, Inc.

Joel M. Miller, Miller & Wrubel P.C., New York City, for HSN Direct International, Limited.

*OPINION AND ORDER*

LYNCH, District Judge.

Plaintiff Media Group, Inc., brought this action for breach of a settlement agreement by which the parties settled their cross-claims in an earlier litigation. In its initial complaint, Plaintiff sought specific performance of certain provisions of the agreement; it subsequently sought leave to amend the complaint to add causes of action for damages for breach of the agreement, as well as rescission of the settlement. Defendant HSN Direct International Ltd. consented to the addition of a cause of action for damages, and an amended complaint adding such a claim was duly filed. Defendant refused to consent, however, to the addition of the claim for rescission, thus triggering this motion. (Miller Aff. ¶¶ 18–20.)

This case arises from an earlier litigation before this Court. That case initially grew out of a suit against both of the parties to the present action by, among others, one Wendi Rogers, whom the parties here refer to as the "talent" in a series of television advertisements or "infomercials" designed to sell a hair-removal product to the public. (*Id.* ¶ 4.) Although Rogers' underlying action was settled before trial, the cross-claims between the present parties went to trial in October 1999. On October 15, 1999, some ten days after commencement of trial, the parties settled their dispute. All claims were released, and Plaintiff agreed to pay defendant $1.5 million. (*Id.* ¶¶ 4–8.)

The settlement agreement between the parties specifies that this sum covers three different subjects: $1,100,000 as damages for infringement of Defendant's trademark for the product, $200,000 in unpaid royalties relating to the product, and $200,000 as payment for certain customer lists to be delivered by Defendant to Plaintiff. In addition, Plaintiff agreed to destroy infringing packaging, to assign to Defendant any trademarks it had obtained relating to the product, and to the entry of a permanent injunction against it. (Benowich Decl. Ex. C at ¶¶ 1.1., 1.3.)

The provision relating to the customer lists, which is the subject of the present litigation, provided that within 30 days of the settlement, Defendant should deliver lists "containing the names, addresses and telephone numbers of not less than 700,000 persons, in the aggregate, of which approximately 600,000 shall be purchasers of [the product] and at least 100,000 shall be persons who have purchased [other] products ... from HSN Direct within the last twelve (12) months." (*Id.* ¶ 1.6.) Plaintiff claims that Defendant has breached this provision of the agreement, in that the lists provided did not comply with the conditions in various respects. Specifically, according to the complaint, about 10% of the 700,000 names did not have phone numbers, and about 4% had invalid zip codes. (First Amended Compl. ¶ 12.) (It is also alleged that about 240 names were duplicates (*id.*), but since Defendant provided nearly 701,000 names in total, this alleged defect is immaterial.) Plaintiff also asserts that "informal surveys" of persons on the lists led it to have "concerns" about whether the listed persons had purchased the product or other products from Defendant. (*Id.*)

As noted above, Plaintiff now seeks to add to its claims for specific performance and damages a claim for rescission of the settlement agreement.

Motions for leave to amend are addressed to the discretion of the Court. *Cifarelli v. Village of Babylon,* 93 F.3d 47, 53 (2d Cir. 1996). Ordinarily, permission to amend the complaint, particularly at an early stage of the litigation, should be "freely given." *United States v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,* 889 F.2d 1248, 1254 (2d Cir.1989) (internal quotations omitted). "Futility," however, is a recognized ground for refusing leave to amend; where a proposed amended cause of action is "legally insufficient on its face," permission to amend can be denied. *Crossland Fed. Sav. Bank v. A. Suna & Co. Inc.,* 935 F.Supp. 184, 189 (E.D.N.Y.1996). In this case, Plaintiff has no reasonable likelihood of succeeding in having the settlement agreement rescinded. Accordingly, permission to amend the complaint is denied.

This Court entirely agrees with the policy favoring liberal amendment of complaints, and in the ordinary case would be inclined to

**112**

grant a motion for leave to add a new cause of action or new theory arising from the same operative facts. This case, however, presents exceptional facts. The relief Plaintiff seeks in the intended additional cause of action is extraordinary, in that rescission of the settlement agreement would in effect restore to the Court's calendar a civil action that was settled in the midst of trial in October 1999. While settlement agreements, like other contracts, may be rescinded for fraud or mutual mistake, *see, e.g., McDarren v. Marvel Entertainment Group, Inc.*, No. 94 Civ. 0919(LMM), 1994 WL 388994, at *7 (S.D.N.Y. Jul. 22, 1994); *Ostman v. St. John's Episcopal Hospital*, 918 F.Supp. 635, 646 (E.D.N.Y.1996), the burden on the parties and on the court of doing so are particularly severe. Moreover, the Court must be careful to guard against the possibility that parties will seek to manipulate settlements to gain strategic advantage, settling and "unsettling" litigation to suit their immediate purposes.

In this instance, the cause of action that Plaintiff seeks to add demands an equitable remedy that itself is addressed to the Court's determination of what is fair between the parties. While Plaintiff contends that the purchase of the lists was a "material inducement" (First Amended Compl. ¶ 15) to it to settle the case, the face of the settlement agreement makes clear that the lists were only a limited part of the agreement between the parties. The agreement stipulates that the lists are being sold for $200,000. In contrast to the size of this transaction, Plaintiff agreed to pay $1,300,000 in damages to Defendant, to transfer all interests in the disputed trademarks to Defendant, to destroy all infringing packaging, to submit to a permanent injunction against further infringement, and to drop all its own claims against Defendant. In this context, the claim that the entire agreement hinged on the delivery of the customer lists Defendant agreed to provide is fanciful; the sale of the lists is on the very face of the agreement provided with a separate consideration in an amount that accounts for less than 15% of the total amount paid by Plaintiff.

Moreover, the breaches alleged by Plaintiff are of dubious significance even as they relate to the sale of the lists themselves, let alone to the overall settlement agreement. The defects actually alleged in the complaint are technical and affect a small fraction of the total number of names provided. Since the settlement agreement specifies a price for the lists of $200,000, it is reasonably apparent that a non-compliance rate of even 15% would be reasonably compensated by damages of $30,000, or about 2% of the total settlement amount.

Under these circumstances, the proposed rescission claim has no reasonable likelihood of success. Permission to file the amended complaint is denied, without prejudice to renewal of the motion at a later stage of the litigation, if discovery discloses facts that would justify expansion of Plaintiff's claims. SO ORDERED.